In re the MARRIAGE OF Pamela
ALDRICH, n/k/a Pamela
Thompson, Petitioner,

and

Wayne R. Aldrich, Respondent.

No. 96SC317.

Supreme Court of Colorado,
En Banc.

Sept. 22, 1997.

Smith & Lillie, LLC, Michael W. Lillie, Englewood, for Petitioner.

David N. Bolocofsky, P.C., David N. Bolocofsky, Denver, for Respondent.

Justice BENDER delivered the Opinion of the Court.

This case arises from a motion to modify child support filed by Wayne Aldrich (the father). After holding an evidentiary hearing, the district court denied the father's motion and granted attorney fees to the mother.

The court of appeals in *In re the Marriage of Aldrich,* No. 95CA693 (Colo.App. Feb. 29, 1996) (not selected for official publication), held that the district court failed to make adequate findings of fact on both the motion to modify child support and the request for attorney fees and costs and remanded the case for further findings. The mother petitioned for certiorari review.[1] We reverse in part and affirm in part.

We hold that the district court's findings of fact adequately support the denial of the father's motion for modification, and that under the facts of this case, the district court was not required to raise, *sua sponte,* issues related to modification not raised by the father. We hold that additional findings are necessary to support the district court's award of attorney fees in this case. We therefore reverse in part, affirm in part, and remand to the court of appeals with instructions to return this case to the district court for additional findings on the issue of attorney fees.

## I.

The mother and the father married on August 5, 1973. A son was born in 1977 and

---

1. The issues were framed on certiorari as follows:

(1) Whether the court of appeals erred by holding that in denying a motion to reduce child support, a trial court must address all the factors in section 14–10–115(3) to 115(16), 6B C.R.S. (1987 & 1996 Supp.), and make findings necessary to apply the child support guidelines, even when the district court concludes that the moving party has not proffered sufficient, credible evidence.

(2) Whether the court of appeals incorrectly held that the district court's award of attorney fees was procedurally erroneous.

a daughter was born in 1986. On March 23, 1988, the district court issued a decree of dissolution incorporating a separation agreement under which the mother and the father agreed to joint legal custody of the two minor children, with the mother serving as the primary residential custodian for both children. On August 18, 1990, the district court approved a stipulated amendment to the separation agreement and permanent orders that provided that the father would be the primary residential custodian of the son, and that the mother would be the primary residential custodian of the daughter. Included in this stipulation was the requirement that the father pay the mother $615 per month in child support. This child support order was based in part on the day care expenses for the daughter of $326 per month, the mother's reported income of $1,040 per month, and the father's reported income of $3,467 per month.

In December of 1993 the father filed a motion to modify child support, alleging that he was no longer able to pay the $615 per month and claiming a substantial and continuing downward change in his financial circumstances. Thereafter, the father requested by motion that the district court consider the issue of work-related child care costs at the hearing because the mother was no longer working and incurring these costs. The parties presented evidence at a hearing on February 7, 1995 on the father's motion for modification.

At the hearing the mother testified that for part of 1992 and all of 1993, she was a full-time homemaker and incurred no work-related child care expenses. The mother testified that in 1994 she worked approximately twelve hours per week at a part-time job, earning an annual total of $2,200.

The father testified that in 1992 he and his new wife started a corporation (Power logics) in which they were the only shareholders, each holding fifty percent of the stock, and the sole officers of the company. In 1993,

the father and his wife declared an adjusted gross income of $27,713, with $14,000 attributed to the father. However, their joint bank statements reflected approximately $111,000 in deposits for 1993. In his testimony the father was unable to explain satisfactorily the source of these deposits. In addition, the couple purchased a $164,000 home with a $140,000 mortgage and financed a $19,000 automobile in 1993. Also in 1993, the father resigned as an officer of the corporation, declared himself an employee, lowered his salary, reduced his share of the company to thirty percent, and raised his wife's share to seventy percent. In 1994, the couple declared a combined adjusted gross income of $46,323, with $20,350 allocated to the father.

The district court allowed the attorneys for both parties to present closing arguments. The attorneys focused their arguments on whether the father's income had in fact decreased.[2] The attorneys presented no argument on the issue of work-related day care.

At the conclusion of the hearing the district court denied the father's motion finding that the father had not met his burden of showing a substantial and continuing change in circumstances which would result in a ten percent or more modification in child support. The court did not determine the current incomes of the parties and did not specifically assess the impact of the termination of work-related child care expenses. The court found:

> In 1992, Power logics was one thing and became another when 70 percent of the business was given over to his wife, Jennifer. It is clear, based on Mr. Aldrich's testimony, he could have done just about anything he wanted.
>
> . . . .
>
> This is a case in which the income that they declare and the income that they appear to be taking is completely inconsistent with their actual income for 1993 and with the money that came in and out of

2. To a lesser extent, the parties addressed the amount of back child support owed, an issue not presented to us on review.

their joint bank account. He clearly had unfettered decision-making power, he and his wife, with regard to how they would divide up the ownership of the company.

. . . .

The Court finds, based upon observing the demeanor of the petitioner and examining this case in the context of the 1993 tax return and the testimony of the petitioner that he is not credible with regard to his income for 1993 and for various other years.

The Court finds that the substance of the motion to modify child support is no more than accounting flummery. There is no substance to the motion. It is disappointing that the Court is asked to believe that somehow this responsibility to his shareholders, that he and his new wife are somehow required that his income be in the teens when $111,000 is going through his bank account and he is living in a new home with a healthy mortgage and managing to pay for it; and that this reorganization was somehow for any purpose other than defeating and defying the order of this court with regard to child support.

Based on that testimony, the Court cannot make a finding based on Colorado Revised Statutes 14–10–122 or 14–10–115 read in conjunction that the petitioner has met his burden of showing any changed circumstance that is substantial and continuing. There is nothing here to suggest that there is a ten percent or more change in the finances involved in the child support that would be deemed to be substantial and continuing.

At this point, the mother's attorney requested attorney fees incurred in the defense of the motion for modification. The father's attorney responded by requesting that the court allow each party to pay its own counsel. The court continued:

[The] Court finds this . . . motion . . . to modify child support and visitation was frivolous and vexatious within the meaning of the statute. There is no merit to either

of these motions that were brought before it except for the purpose of avoiding the responsibility that was the result of the separation agreement of the parties and an order of the Court.

The Court finds absolutely no substance to the motion to modify child support. . . . The Court awards all attorney's fees and costs to the respondent.

On February 16, 1995, the mother filed an affidavit claiming attorney fees in the amount of $15,485 and costs in the amount of $984.82. She also filed a proposed written order reflecting the district court's oral ruling awarding fees and costs in all respects except for the inclusion of section 14–10–119, 5 C.R.S. (1997), as an additional basis for the award.

Thereafter, the father filed a motion objecting to the reasonableness of the amount of fees claimed by the mother, stating that no more than $8,000 would be reasonable. Additionally, the father objected to the proposed order because it included section 14–10–119 as a basis for the award when the court did not include this provision among its stated reasons for the award. The father did not specifically request a hearing on the reasonableness of the fees to be awarded.

The district court approved the proposed order without conducting a hearing, and reduced the fees from $15,485 to $10,000 without further explanation. The father appealed.

The court of appeals reversed, holding that despite the father's failure to prove a decrease in income, the district court should have made findings regarding the parties' current incomes and that the district court should have applied the guidelines to support its decision that the father had not met his burden of showing a substantial and continuing change of financial circumstances. The court of appeals reasoned that if the father was unwilling to be candid and disclose accurately his financial circumstances, then the district court should have calculated an amount representing the father's income by drawing reasonable inferences from the fa-

ther's financial documents presented as evidence at the hearing.

On the issue of attorney fees, the court of appeals held that the district court failed to make adequate factual findings under section 13–17–102, 5 C.R.S. (1997), and under section 13–17–103, 5 C.R.S. (1997), which contains eight factors to consider for an award of attorney fees and costs under section 13–17–102. Finally, the court concluded that if the attorney fees were awarded under section 14–10–119, then the district court was required to determine, at a minimum, the parties' respective incomes. The court of appeals remanded the case to the district court for additional findings on both the motion for modification and the award of attorney fees and costs.[3]

## II.

The General Assembly enacted Colorado's child support guidelines in 1986 and articulated the express goals of establishing an adequate amount of support for children subject to the ability of the parents to pay; making awards more equitable by ensuring consistent treatment of persons in similar circumstances; and improving the efficiency of the judicial process by promoting settlements and giving guidance in establishing levels of awards. *See* § 14–10–115(3)(c), 5 C.R.S. (1997). We have stated that "a child support order is calculated to serve the best interests of the child." *Abrams v. Connolly*, 781 P.2d 651, 656 (Colo.1989). In addition, one of the purposes of article 10 is to mitigate the potential harm to children caused by the dissolution of marriage. *See* § 14–10–102(2)(b), 5 C.R.S. (1997).

Under the guidelines, district courts calculate a monthly amount of child support based on the parties' combined adjusted gross income, adjust the child support based upon the needs of the children for extraordinary medical expenses and work-related child care costs, and allocate each parent's share based

on the physical custody arrangements. *See* § 14–10–115(4), 5 C.R.S. (1997).

■ Modification of the terms of an existing order of support may occur "only upon a showing of changed circumstances so substantial and continuing as to make the terms unfair." § 14–10–122(1)(a), 5 C.R.S. (1997). A change is not "substantial and continuing" if application of the guidelines to the parties' present situation results in a change of less than ten percent in the amount of child support currently in effect. *See* § 14–10–122(1)(b), 5 C.R.S. (1997). Therefore, a rebuttable presumption exists "that a modification of child support must be granted whenever application of the child support guidelines would result in more than a ten percent change in the amount due." *In re Marriage of Pugliese*, 761 P.2d 277, 278 (Colo.App.1988).

■ The question is not whether, based on the current financial circumstances of the parties, a court would have awarded the same amount of child support as that incorporated in the original decree, but whether the terms of the original agreement have become unfair. *See In re Marriage of Anderson*, 638 P.2d 826, 827 (Colo.App.1981). The movant who seeks modification bears a heavy burden of proof. *See McVay v. Johnson*, 727 P.2d 416, 418 (Colo.App.1986).

■ In any action to modify child support, the district court is required to apply the guidelines initially to the evidence of change in order to determine whether modification should be granted. *See* § 14–10–115(3)(a), 5 C.R.S. (1997) (stating that the guidelines "*shall* be used as a rebuttable presumption") (emphasis added); § 14–10–122(1)(b) ("Application of the child support guideline ... which results in less than a ten percent change in the amount of support due per month *shall* be deemed not to be a substantial and continuing change of circumstances.") (emphasis added); *In re Marriage*

---

**3.** The court of appeals also instructed the district court to reconsider the issues of arrearages and parenting time on remand. The grant of certio-

rari did not include these issues and thus they are not before us.

*of Elmer,* 936 P.2d 617, 621 (Colo.App.1997) (district court shall initially apply the guidelines to evidence of change to determine whether the change is substantial and continuing); *In re Marriage of Greenblatt,* 789 P.2d 489, 491 (Colo.App.1990) (same).

■ Applying these principles to the facts of this case, we agree with the mother's argument that the district court was not required to undertake a calculation of child support using the guidelines because the father presented no credible evidence of change.

At the hearing the father argued his change in income as the sole basis for reducing his child support payment. The district court found the father's testimony regarding his financial circumstances to be incredible and determined that the father failed to demonstrate any financial change of circumstances. This determination is supported by the record. *See Peterson v. Ground Water Comm'n,* 195 Colo. 508, 516, 579 P.2d 629, 634–35 (1978) (stating that trial court's findings of fact will not be disturbed on appeal unless they are "so clearly erroneous as to find no support in the record").

Although a district court must apply the guidelines initially to evidence of change, here, the district court found no credible evidence of change. If the parties have experienced no change in circumstances since the entry of the 1990 order of support, application of the guidelines is not needed. Because it was the father's burden to show such a change and because the father failed to demonstrate evidence of change, we hold that the district court was not required to undertake an application of every statutory guideline factor before denying the motion for modification.

■ The father argues that the district court was required to address the guideline factors of work-related day care and voluntary underemployment.[4] Although the father failed to bring these issues to the attention of the court at the hearing, the father contends that because evidence of change was presented on these issues, the district court was obligated to rule on these issues *sua sponte.*

The statute is silent as to whether the district court must address specific guideline factors *sua sponte* if the evidence suggests that these factors may be relevant but the parties do not demonstrate to the court how these factors would effect a ten percent change in child support. There are numerous reasons why a party may abandon or may not raise a particular issue in furtherance of a motion to modify child support. These reasons include, to mention only a few, trial strategy, settlement discussions with the other party, a belief that the issue has no merit, and ignorance of the relevant guideline factors.

Requiring a trial judge to rule *sua sponte* on all the guideline factors in all modification cases encroaches upon the judge's essential role as a neutral decision-maker. Nonetheless, the trial judge has a special obligation to ensure that the modification of child support serves the best interest of the child. Child support is for the benefit of the child and not the parent. *See* § 14–10–115(14), 5 C.R.S. (1997) ("The custodial parent shall be presumed to spend his or her total child support obligation directly on the children.").

■ We believe that the better practice is for the trial judge to remain in the traditional role of the neutral decision-maker by not intervening *sua sponte* to raise arguably relevant issues not urged by either party. However, a determination of a motion for modification of child support should be ana-

4. At the time of the hearing, the mother was no longer incurring day care expenses and her income was substantially lower than the figure she reported on her affidavit underlying the 1990 order of support. The father might have argued that the mother was voluntarily underemployed and, in conjunction with the lack of day care expenses, imputed potential income to the moth-er as a additional reason for a reduction in his support obligations. *See* §§ 14–10–115(11), (7)(b)(I). Although the father mentioned in a pre-hearing motion that day care would be an issue at the hearing, the father did not pursue this issue or the issue of underemployment at the hearing.

lyzed by the district court in terms of the best interests of the child. Hence, we leave to the district court the discretion to determine on a case by case basis whether the best interests of the child require the court to raise guideline factors on its own motion in a proceeding for modification of child support.

Applying our discussion of these competing considerations to this case, we acknowledge that the father was represented by counsel and that he was seeking to reduce his child support because he allegedly lacked the financial resources to pay the ordered amount. Finding this claim incredible, the district court also found that the father filed the motion for the sole purpose of "defeating and defying the order of th[e] court with regard to child support." It is apparent that the district court, after hearing the evidence and judging the credibility of the parties, found the father's motion to modify inconsistent with the best interests of his daughter.

In addition, we note that in this case, requiring the district court to raise *sua sponte* the issues of the mother's elimination of day care expense and underemployment runs counter to the guidelines' assumption that the current order of support is presumed to be correct and diminishes the heavy burden on the father to prove a substantial and continuing change in circumstances that renders the current order of support unfair. Under these facts, we cannot say that the district court abused its discretion by refusing to raise *sua sponte* the issues of work-related day care and voluntary underemployment that the father failed to raise. These issues were relatively minor and collateral and were completely overshadowed by the focus on what the trial court found to be the father's incredible claim of a substantial reduction in his income. The reason the other issues were not adequately brought to the attention of the district court was precisely because of the father's strategic decision to focus exclusively on his claim that his income was substantially reduced.

Absent evidence of change, demonstrated by the father, the district court was not required to recalculate child support under the guidelines. Accordingly, we affirm the district court's denial of the father's motion to modify and reverse the court of appeals' ruling on this issue.

### III.

We now turn to the issue of attorney fees under sections 14–10–119 and 13–17–102. As a preliminary matter, we note that these two statutes are not mutually exclusive. Section 14–10–119 permits the award of attorney fees in proceedings related to dissolution under article 10 of title 14, and section 13–17–102 governs the award of attorney fees in civil cases in general. Because dissolution proceedings under article 10, title 14 are civil, it is permissible for a district court to award attorney fees under section 14–10–119, section 13–17–102, or both. However, as the court of appeals observed, each statutory award of fees and costs serves a different policy purpose and consequently, requires different findings.

The father argues, and the court of appeals held, that additional findings were necessary to support the district court's award of attorney fees to the mother. We agree with the father, but employ slightly different reasoning from that of the court of appeals.

### A.

■ Section 14–10–119 [5] permits the district court to apportion attorney fees and costs in dissolution and post-dissolution matters based upon the relative economic circumstances of the parties in order to equalize their status and to ensure that neither party suffers undue economic hardship as a result of the proceedings. *See In re Marriage of Lee,* 781 P.2d 102, 105 (Colo.App.1989).

order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under ·this article and for attorney's fees. . . .

---

**5.** Section 14–10–119, 5 C.R.S. (1997), provides in pertinent part:
The court from time to time, after considering the financial resources of both parties, may

■ In awarding fees and costs under section 14–10–119, the district court must consider the relative financial status of each party by making findings concerning their relative incomes, assets, and liabilities. *See In re Marriage of Kiefer*, 738 P.2d 54, 56 (Colo.App.1987). The district court then apportions fees and costs in light of the statute's equitable purpose, making findings that explain how and why it arrived at the specific amount of the award.

Here, the district court made no findings as to the parties' incomes, did not articulate how it arrived at the $10,000 award of fees and $984.52 in costs, and did not explain why the amount awarded served to equalize the economic status of the mother and the father. We agree with the father that the district court's findings are not sufficient to support an award of fees under section 14–10–119 and accordingly affirm the court of appeals on this issue.

### B.

We now address the adequacy of the findings supporting the district court's award of attorney fees under section 13–17–102.

The General Assembly enacted section 13–17–102 because our courts are burdened with unnecessary litigation that interferes with the effective administration of civil justice. The award of attorney fees is an important sanction available to a court in a civil case to punish an attorney or a party who engages in conduct improperly instigating or prolonging litigation. *See* § 13–17–101, 5 C.R.S. (1997). An award of fees and costs also serves the remedial purpose of compensating an opposing party who has been victimized by the misconduct of an opponent or an attorney.

Under section 13–17–102, a district court shall award attorney fees in any civil case when an attorney or a party has unnecessarily expanded the proceeding by asserting a claim or a defense that lacks "substantial justification," which means that the claim or defense is "substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4).[6]

■ In deciding whether to award attorney fees and in assessing the amount of such fees under section 13–17–102, the district court must consider at least the factors set forth in section 13–17–103(1), which are:

(a) The extent of any effort made to determine the validity of any action or claim before said action or claim was asserted;

(b) The extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid within an action;

(c) The availability of facts to assist a party in determining the validity of a claim or defense;

(d) The relative financial positions of the parties involved;

(e) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith;

(f) Whether or not issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict;

(g) The extent to which the party prevailed with respect to the amount of and number of claims in controversy;

(h) The amount and conditions of any offer of judgment or settlement as related to the

---

**6.** Section 13–17–102(4) provides, in pertinent part:

The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13–21–111.5(3) that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

amount and conditions of the ultimate relief granted by the court.

§ 13–17–103(1). Therefore, the district court is required to make findings explaining why the conduct lacked substantial justification and discuss how the court arrived at the dollar amount of the award. *See id.; Bilawsky v. Faseehudin,* 916 P.2d 586, 591 (Colo. App.1995). Only the relevant factors need be addressed. *See Parker v. Davis,* 888 P.2d 324, 326 (Colo.App.1994). Conclusory statements that a claim is frivolous, groundless, or vexatious are insufficient for purposes of appellate review and inadequate to satisfy the statutory requirement of specificity. *See* § 13–17–103(1); *In re Marriage of Gomez,* 728 P.2d 747, 750 (Colo.App.1986).

 Summarizing, to award attorney fees and costs under section 13–17–102, the district court must make findings that reflect how the relevant factors under section 13–17–103 support the conclusion that the offending party or attorney engaged in improper conduct. Further, the district court must enter findings on these factors, when relevant, to explain the dollar amount of the fees and costs awarded.

 Here, the district court found the father's motion to modify child support "frivolous and vexatious" within the meaning of section 13–17–102(4), stating that the motion had "no merit" and "no substance," and that the motion was "brought for the purpose of avoiding responsibility" for child support. The district court awarded payment of all fees incurred by the mother since January of 1994, when the father filed the motion to modify child support. The record is clear that the district court did not believe a word that the father said. Equally clear is the district court's finding that the mother was forced to spend a considerable sum on attorney fees to counter the sole argument advanced by the father to support his motion—that the father lacked the financial means to continue paying his child support obligation—which the court found incredible.

 As the court of appeals observed, the finding that the motion was "frivolous" is not technically accurate, but the motion was probably "groundless" as that term is used in *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984). In addition, before an action is deemed "vexatious," the district court typically is required to make a finding of bad faith, which did not occur here. *See Bockar v. Patterson,* 899 P.2d 233, 236 (Colo. App.1994).

Considering the facts established in the record and the findings by the district court concerning the father's lack of credibility and his improper motivation for bringing the motion, we agree that the district court's finding that the father's motion lacked substantial justification under section 13–17–102(4) was adequate. The better practice would have been for the district court to articulate the precise statutory language relevant in this case by stating that the motion was "groundless." Nonetheless, the court's conclusion that the motion lacked substantial justification is supported by the district court's findings of fact that the motion was without merit and lacked substance. Therefore, we affirm the district court's decision to award fees and costs against the father.

 The mother requested $15,485 in fees and the district court ultimately awarded $10,000. The district court did not discuss any of the factors under section 13–17–103 in determining this amount, nor did it explain why it reduced the amount of fees from the mother's request or how it arrived at the reduced amount. As a result, the district court's reasoning is unclear and does not permit meaningful appellate review. With respect to the specific amount of the award, we hold that the district court must make findings required by section 13–17–103 on remand.

## C.

 Finally, the father contends that because he objected to the full amount of fees requested by the mother and stated that no more than $8,000 was reasonable, he was entitled to a hearing on the issue of attorney

fees even though he did not specifically request a hearing. We disagree.

 Neither section 14–10–119 nor section 13–17–102 requires the district court to conduct a hearing on the reasonableness of the award of attorney fees and costs in every case. If a party requests a hearing concerning the award of fees and costs under either statute, then the district court must hold a hearing. *See Pedlow v. Stamp*, 776 P.2d 382, 385–86 (Colo.1989); *Board of County Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo.1987); *cf. Tower v. Tower*, 147 Colo. 480, 484, 364 P.2d 565, 567–68 (1961); *In re Marriage of Kiefer*, 738 P.2d 54, 56 (Colo. App.1987). However, a party who fails to make a timely request for such a hearing waives the right to a hearing. The district court is under no obligation to conduct a hearing *sua sponte*. *See Schmidt Constr. Co. v. Becker–Johnson Corp.*, 817 P.2d 625, 628 (Colo.App.1991);[7] *cf. Christian v. Westmoreland*, 809 P.2d 1105, 1106 (Colo.App. 1991) (trial court need not conduct hearing before denying attorney fees if neither party requests a hearing).

## IV.

We hold that the district court made sufficient findings on the issue of child support, and we reverse the court of appeals' holding that the findings were inadequate.

On the issue of attorney fees, we hold that the district court's findings were sufficient to support an award of fees under section 13–17–102, but the district court must justify the amount of the award by making findings under section 13–17–103. The district court may rely completely on the existing record, or the district court may hold a hearing on this issue if it deems a hearing appropriate. In addition, if the district court determines that an award of attorney fees under section 14–10–119 is appropriate, then the court must enter findings consistent with this opinion to support such an award. Accordingly, we affirm the court of appeals' decision that additional findings are necessary on the issue of attorney fees and remand this case to the court of appeals to return to the district court for proceedings consistent with this opinion.

7. In *Little v. Fellman*, 837 P.2d 197, 204 (Colo. App.1991), the court of appeals held that when fees are awarded under section 13–17–102, the record must reflect a hearing at which evidence is presented regarding the amount and reasonableness of fees. The non-movant in *Little* did not make a specific request for a hearing on the issue of attorney fees. The court of appeals nonetheless determined that, because the non-movant made specific objections to certain hourly wages, that the non-movant "clearly" expressed a desire for an opportunity to present further evidence.

We believe the *Schmidt* case articulates the better rule, that the trial court is under no obligation to order a hearing *sua sponte*. Although the trial court must conduct a hearing if one is requested, the trial court need not discern whether an objection to attorney fees contains an implicit request for a hearing. To the extent that *Little v. Fellman* is inconsistent with this position, we overrule it.