The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 8, 2022

**2022COA104**

**No. 21CA0897, *Argo v. Hemphill* — Real Property — Nonprobate Transfers on Death — Transfer of Real Property on Death — Vesting of Ownership in Grantee-Beneficiary — Unrecorded Interests**

In this property rights case, the division of the court of appeals interprets the notice and recording requirements of section 15-15-407, C.R.S. 2021, to determine whether the plaintiff's lifetime lease agreement is enforceable against two defendants who received the contested property by beneficiary deed.

Under section 15-15-407(2), a grantee-beneficiary takes title to a property conveyed by a beneficiary deed subject to several different types of interests at the time of the property owner's death. These include interests the grantee-beneficiary had actual notice of at the time of the owner's death and interests that were recorded before the owner's death.

Under section 15-15-407(3), a party holding an unrecorded interest in the property must record evidence or notice of that interest no later than four months after the owner's death. If the party holding the interest fails to do so, and if the grantee-beneficiary did not have actual notice of the interest at the time they took title, then the party is forever barred from asserting the interest in the property.

The division holds that the plaintiff's unrecorded lifetime lease agreement is unenforceable because the defendants did not have actual notice of it at the time of the owner's death and because it was not recorded within four months of the owner's death.

Further, the division concludes that the district court's findings were insufficient to permit meaningful appellate review of its ruling that the lifetime lease agreement was a spurious document and award of attorney fees and costs to the defendants.

Accordingly, the division (1) affirms the judgment that the lifetime lease agreement is unenforceable; (2) reverses the judgment in favor of two of the defendants on their spurious document counterclaim; (3) reverses the order awarding attorney fees and costs; and (4) remands for further proceedings.

COLORADO COURT OF APPEALS    **2022COA104**

Court of Appeals No. 21CA0897
Otero County District Court No. 19CV30031
Honorable Michael A. Schiferl, Judge

Angela Lea Argo,

Plaintiff-Appellant,

v.

Christina T. Hemphill, a/k/a Christina Tara O'Berto and Dianna K. Hemphill,
a/k/a Dianna K. Hemphill-O'Byrne,

Defendants-Appellees.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
ORDER REVERSED, AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE KUHN
Navarro and Hawthorne*, JJ., concur

Announced September 8, 2022

---

Brunette Law Office, LLC, Stephen A. Brunette, Colorado Springs, Colorado, for
Plaintiff-Appellant

Jessica Hoyt, Denver, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1    Plaintiff, Angela Lea Argo, appeals the district court's judgment in favor of defendants, Christina T. Hemphill (also known as Christina Tara O'Berto), Dianna K. Hemphill (also known as Dianna K. Hemphill-O'Byrne), and Steven K. Rein, and its order awarding attorney fees and costs to the Hemphills. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.    Background and Procedural History

¶ 2    This case involves a property rights dispute over an agricultural property in Otero County. The property belonged to Don William Argo, who died on March 19, 2018, after a lengthy illness. Angela is Don's surviving spouse.[1] The Hemphills are Don's nieces.

¶ 3    In September 2017, Don executed a last will and testament bequeathing the property to the Hemphills upon his death. That same month, Don also executed and recorded a beneficiary deed conveying the property to the Hemphills upon Don's death.

---

[1] To promote clarity and prevent confusion, we refer to Angela and Don by their first names throughout the opinion. We mean no disrespect in doing so.

¶ 4    When Don died, title to the property passed to the Hemphills. The Hemphills attempted to sell the property to Rein. The sale was to be completed on March 20, 2019. The Hemphills contend the sale fell apart because Angela recorded a lifetime lease agreement regarding the property. When the sale did not go through, they leased the property to Rein in October 2019.

¶ 5    Angela contends that she has a leasehold interest in the property. On March 16, 2018 — three days before Don's death — Angela and Don executed an agreement granting Angela a lifetime lease for the property. The agreement stated that it "shall supersede the Beneficiary Deed should Don William Argo die. Even though said property is transferred to the new owners upon death, this agreement must be honored." It further specified that "[u]pon [Angela's] death all uses of the land will be then transferred to [the Hemphills]." Neither Don nor Angela recorded the lifetime lease agreement at or shortly after the time it was created.

¶ 6    On August 25, 2018 — more than five months after Don's death — Angela personally delivered the lifetime lease agreement to the Hemphills at a family gathering. It is undisputed that the Hemphills did not have notice of the lifetime lease before that date.

2

¶ 7    During the next few months, Angela unsuccessfully attempted to persuade the Hemphills to honor the lifetime lease.  Then, on February 1, 2019, the Hemphills' attorney sent Angela a letter stating that (1) per the beneficiary deed, title to the property vested in the Hemphills upon Don's death; (2) the lifetime lease agreement was unenforceable and Angela was forever barred from asserting an interest in the property because she didn't record her interest in the property within four months of Don's death; and (3) she had one month to remove her personal belongings from the property.

¶ 8    On March 15, 2019, Angela recorded the lifetime lease agreement in Otero County.

¶ 9    The next month, Angela filed suit against the defendants, seeking a "complete adjudication of the rights of all parties to this action with respect to the [property]" under C.R.C.P. 105.  In the complaint, which contained several individual claims against the Hemphills and Rein, Angela sought a ruling that her lifetime lease agreement is enforceable against all the defendants.  In response, the Hemphills filed several counterclaims against Angela, petitioned the court to declare that the lifetime lease agreement is a spurious document under C.R.C.P. 105.1 and sections 38-35-201 to -204,

C.R.S. 2021, and requested that the court quiet title to the property in them. The district court held a two-day bench trial on Angela's claims and the Hemphills' counterclaims in April 2021. After Angela rested her case, the Hemphills and Rein separately moved for directed verdicts under C.R.C.P. 50 on the grounds that the lifetime lease agreement is unenforceable.

¶ 10    In oral findings and a subsequent written order, the district court found that the lifetime lease agreement is unenforceable, "void, invalid, and otherwise of no legal [e]ffect" under section 15-15-407, C.R.S. 2021, because the defendants did not have notice of the lifetime lease agreement until more than four months after Don's death. The court ruled that, because the agreement is unenforceable, Angela has no right, title, or interest in the property. The court dismissed Angela's remaining claims.

¶ 11    Additionally, the court implicitly found that the lifetime lease agreement is a spurious document, ruled in favor of the Hemphills on their spurious document counterclaim, quieted title to the property in the Hemphills, and ordered the defendants to file any attorney fees requests within twenty-one days of the issuance of the written order.

4

¶ 12    Angela subsequently filed two timely C.R.C.P. 59 motions for post-trial relief.  In the first motion, Angela contended that the court made inadequate findings on the Hemphills' spurious document counterclaim and asserted that the court incorrectly ruled that the lifetime lease agreement is a spurious document.  In the second motion, Angela contended that the court improperly found that the lifetime lease agreement is unenforceable and invalid and that it improperly quieted title in the Hemphills.

¶ 13    The court denied Angela's post-trial motions in identical written orders that stated, in their entirety, as follows: "Denied.  The evidence at trial was that there was no notice of any type within four months of [Don's] death."

¶ 14    After the court denied Angela's C.R.C.P. 59 motions, the Hemphills filed a motion for attorney fees and costs.  The Hemphills sought attorney fees under two theories.  First, the Hemphills argued they were entitled to a mandatory award under the spurious document statutes, which require the court to enter a monetary judgment in favor of the prevailing party on such a claim. § 38-35-204(2), (3).  Alternatively, the Hemphills argued that they were entitled to attorney fees and costs under section 13-17-102,

C.R.S. 2021, on the ground that Angela's claims lacked substantial justification.

¶ 15    The court, without identifying the theory underlying its ruling, granted the Hemphills' motion and awarded $36,318.20 in fees and costs, plus interest at the statutory rate.

## II.    Analysis

¶ 16    Broadly, Angela asserts that the court erred by (1) finding that the lifetime lease agreement is unenforceable and invalid; (2) finding that the lifetime lease agreement is a spurious document; and (3) awarding attorney fees and costs to the Hemphills.  We first address Angela's arguments in turn.  Then we address the Hemphills' request for appellate attorney fees and costs.

### A.    Enforceability of the Lifetime Lease Agreement

¶ 17    Angela raises several interrelated challenges to the court's directed verdict, interpretation of section 15-15-407, and finding that the lifetime lease agreement is unenforceable and invalid.  We address, and reject, each of her arguments.

#### 1.    Standard of Review and Legal Principles

¶ 18    "C.R.C.P. 50 authorizes a party to move for a directed verdict at the close of the evidence offered by the opposing party."  *State*

6

*Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 25. The district court should only grant a motion for a directed verdict where "the evidence compels the conclusion that reasonable [people] could not disagree and that no evidence or inference therefrom has been received at trial upon which a verdict against the moving party could be sustained." *Schuessler v. Wolter*, 2012 COA 86, ¶ 33.

¶ 19    We review the district court's ruling on a motion for directed verdict de novo. *Id.* "Like the district court, we must consider all the facts in the light most favorable to the nonmoving party and determine whether a reasonable [person] could have found in favor of the nonmoving party." *Goddard*, ¶ 26.

¶ 20    Statutory interpretation presents a question of law that we review de novo. *Fischbach v. Holzberlein*, 215 P.3d 407, 409 (Colo. App. 2009). When interpreting a statute, our main goal is to ascertain and effectuate the General Assembly's purpose and intent. *Town of Vail v. Vill. Inn Plaza-Phase V Condo. Ass'n*, 2021 COA 108, ¶ 11. "In doing so, we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we construe words and phrases in accordance with

their plain and ordinary meanings." *Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 14. Where the statutory language is clear and unambiguous, we apply it as written and do not resort to other rules of statutory construction. *Id.*; *Cisneros v. Elder*, 2022 CO 13M, ¶ 21.

### 2. Discussion

¶ 21 Angela contends that the district court's interpretation of section 15-15-407 is erroneous because it (1) conflicts with the plain language and legislative intent of that statute; (2) conflicts with the commonly understood and accepted meanings of the terms "actual notice" and "constructive notice"; and (3) renders the limitation of action provisions of the statutory scheme meaningless. We disagree with her first two arguments, do not resolve the third, and conclude that the lifetime lease agreement is unenforceable based on the plain language of section 15-15-407.

#### a. The District Court's Interpretation Did Not Conflict with the Plain Language and Legislative Intent of the Statute

¶ 22 Under section 15-15-407(1), "[t]itle to the interest in real property transferred by a beneficiary deed shall vest in the designated grantee-beneficiary only on the death of the owner."

8

¶ 23     Section 15-15-407(2) states,

> A grantee-beneficiary of a beneficiary deed
> takes title to the owner's interest in the real
> property conveyed by the beneficiary deed at
> the death of the owner subject to all
> conveyances, encumbrances, assignments,
> contracts, mortgages, liens, and other
> interests, affecting title to the property,
> whether created before or after the recording of
> the beneficiary deed, or to which the owner
> was subject during the owner's lifetime
> including, but not limited to, any executory
> contract of sale, option to purchase, lease,
> license, easement, mortgage, deed of trust, or
> other lien.  The grantee-beneficiary also takes
> title subject to any interest in the property of
> which the grantee-beneficiary has either actual
> or constructive notice.

¶ 24     Section 15-15-407(3)(a), however, imposes a time limit for

asserting an unrecorded interest in the property:

> A person having an interest described in
> subsection (2) of this section whose interest is
> not recorded in the records of the office of the
> clerk and recorder of the county in which the
> property is located at the time of the death of
> the owner, shall record evidence or a notice of
> the interest in the property not later than four
> months after the death of the owner.  The
> notice shall name the person asserting the
> interest, describe the real property, and
> describe the nature of the interest asserted.

¶ 25     Section 15-15-407(3)(b) addresses the result of the failure to

timely record an interest in the property:

9

> Failure to record evidence or notice of interest in the property described in subsection (2) of this section within four months after the death of the owner shall forever bar the person from asserting an interest in the property as against all persons who do not have notice of the interest. A person who, without notice, obtains an interest in the property acquired by the grantee-beneficiary shall take the interest free from all persons who have not recorded their notice of interest in the property or evidence of their interest prior to the expiration of the four-month period.

¶ 26 Together, these provisions unambiguously provide that a grantee-beneficiary takes title to the property subject to a number of different kinds of interests at the time of the owner's death. These include both recorded and unrecorded interests. If a grantee-beneficiary has actual notice of an unrecorded interest at the time of the owner's death, then the grantee-beneficiary takes title subject to that interest. A grantee-beneficiary also takes title subject to any recorded interests at the time of the owner's death.

¶ 27 But an unrecorded interest in the property that the grantee-beneficiary did not have actual knowledge of at the time of the owner's death must be recorded within four months of the owner's death. If the interest is not recorded within that time period, then

the holder of the interest is forever barred from asserting an interest in the property.

¶ 28    Angela argues that the district court's interpretation of the statute is incorrect, but we disagree. Angela's arguments selectively use certain language from the statute while disregarding its overall structure. She contends that the language in section 15-15-407(3)(b) "as against all persons who do not have notice of the interest" exempts her from the four-month recording requirement because she eventually provided notice to the Hemphills. But the principles of statutory interpretation require us to read the statute as a whole, place individual words and phrases in context, and give consistent, harmonious effect to all its parts. *Fischbach*, 215 P.3d at 409. Contrary to her argument, the statutory scheme does contain temporal requirements for notice.

¶ 29    Angela heavily relies on secondary sources in her briefing. We find the statute unambiguous, but those materials would bolster our conclusion even if we did not. Angela points to a pair of 2005 Colorado Lawyer articles. The authors describe themselves as Colorado Bar Association members of a joint committee that apparently drafted the beneficiary-deed legislation. In the articles,

11

they describe how the legislation is intended to work. As to

unrecorded interests in the property, the drafters indicated in one

of those articles that

> as to interests in the property that have not
> been recorded with the clerk and recorder,
> such interests are subject to the requirement
> that they must be recorded within four months
> after the death of the owner. After that
> deadline, the grantee-beneficiary's title will be
> deemed free and clear of any such unrecorded
> interests for which the grantee-beneficiary had
> no actual notice prior to the grantor-owner's
> death. This illustrates yet another intent of
> the drafters: to have the record title capable of
> establishing all interests in the property to
> which the grantee-beneficiary's interest is to be
> subject determinable at the end of the
> relatively short period of four months after the
> death of the owner.

Carl G. Stevens & James G. Benjamin, *Beneficiary Deeds in

Colorado — Part II: Practical Applications*, 34 Colo. Law. 103, 104

(June 2005) (footnotes omitted).

¶ 30     The Hemphills took title to the property subject to other

unrecorded interests of which they had actual notice at the time of

Don's death. Evidence or notice of any unrecorded interests had to

be recorded within the four-month period following his death.

Providing notice to the Hemphills after that time is insufficient and

does not constitute actual or constructive notice within the meaning of the statute. When the statute is read as a whole, Angela's arguments fail.

> b. The District Court's Interpretation Does Not Conflict with the Commonly Understood Meanings of Actual and Constructive Notice

¶ 31    Angela contends that the district court's interpretation "renders meaningless the well-established meaning of the 'actual notice' and 'constructive notice' exceptions incorporated in the statute, by narrowing these exceptions to a four-month period after death." We disagree.

¶ 32    The statute does not change the well-settled definitions of these terms. *See Martinez v. Affordable Hous. Network, Inc.*, 123 P.3d 1201, 1206 (Colo. 2005) (defining actual and constructive notice). Instead, it imposes time limits for a holder of a property interest to record the interest or to provide notice of the interest to a grantee-beneficiary and provides that failure to do so will render the interest unenforceable.

¶ 33    Nor do we perceive any way in which the district court misapplied or misinterpreted these phrases. The district court's findings identify both when Angela gave the Hemphills actual notice

of the lifetime lease agreement and when she recorded it. The court also correctly found that both actions were too late under the statute to preserve Angela's interest in the property. The district court's interpretation of the statute did not alter the meaning of actual or constructive notice, and we reject Angela's argument to the contrary.

### c. Angela's Statute of Limitations Argument is Unpreserved

¶ 34 Angela contends that the court's interpretation of section 15-15-407 renders meaningless the statute of limitations provision in section 15-15-411(1)(b)(II), C.R.S. 2021.

¶ 35 Angela first raised this argument in her second C.R.C.P. 59 motion. But "[a]rguments made, as here, for the first time in a post-trial motion are too late and, consequently, are deemed waived for purposes of appeal." *Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66. Therefore, this argument is unpreserved and we decline to consider it.

### d. The Lifetime Lease Agreement is Unenforceable

¶ 36 We conclude that the lifetime lease agreement is unenforceable under section 15-15-407. As relevant to this case, the statute

14

provides two paths that could have rendered the lifetime lease agreement enforceable against the Hemphills. First, the agreement could have been recorded, or actually provided to the Hemphills, before Don's death. In that case, the Hemphills would have had actual or constructive notice at the time title vested in them, and they would have taken title subject to the agreement. Second, Angela could have recorded the agreement, or notice of its existence, within four months after Don's death.

¶ 37    It is undisputed that the Hemphills did not have notice of Angela's lifetime lease agreement at the time of Don's death, which is when title in the property vested in them. And it is also undisputed that Angela did not record the lifetime lease agreement until nearly a year after his death. Angela advances several arguments based on Don and Angela's intent in creating the agreement and whether Angela acted in good faith in recording it. But under section 15-15-407, these facts are not relevant to our analysis. Because the notice and recording provisions of section 15-15-407 were not satisfied, the agreement is unenforceable and Angela is forever barred from asserting an interest in the property.

The district court did not err by reaching this conclusion or by quieting title to the property in the Hemphills.

### B. The Record is Insufficient To Determine Whether the Lifetime Lease Agreement is a Spurious Document

¶ 38 Angela also contends that the court erred by determining that the lifetime lease agreement is a spurious document. One of her arguments is that the court made insufficient findings to enable appellate review. We agree with that contention.

### 1. Standard of Review and Legal Principles

¶ 39 We review de novo whether a recorded document is a spurious document, as defined by section 38-35-201(3). *Evans v. Evans*, 2019 COA 179M, ¶ 10.

¶ 40 "The spurious liens and documents statute protects property owners from frivolous claims used to cloud title as a means of protest or harassment." *Better Baked, LLC v. GJG Prop., LLC*, 2020 COA 51, ¶ 17. The statute allows a person "whose real . . . property is affected by a recorded or filed . . . document' to petition for the release of a 'spurious document.'" *Id.* (quoting § 38-35-204(1)); *see* C.R.C.P. 105.1.

¶ 41     If, following a show cause hearing, the district court "determines that the lien or document is a spurious lien or spurious document, [it] shall make findings of fact and enter an order and decree declaring the spurious lien or spurious document . . . invalid [and] releasing the recorded or filed spurious lien or spurious document."  § 38-35-204(2); C.R.C.P. 105.1(d); *see Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 31.  The prevailing party in a spurious documents action is automatically entitled to a monetary judgment for its reasonable attorney fees and costs. § 38-35-204(2), (3).

2.     Additional Background and Discussion

¶ 42     The court did not explicitly find that the lifetime lease agreement is a spurious document.  And it did not make any findings related to whether the lease agreement is a spurious document during its oral ruling at trial.  Instead, it ordered the defendants to prepare and file a draft order, which it appears to have approved without modification.  The final order states only that "[j]udgment is entered in favor of the Hemphill Defendants on their Claims A and B.  Title to the Subject Property is hereby quieted to the Hemphill Defendants who have fee simple title to the

17

Subject Property, with the right of possession." While this portion of the order explains the basis for quieting title, it does not reveal the basis on which the court entered judgment on the spurious document counterclaim.

¶ 43    The post-trial motions proceedings do not shed more light on this issue. In its order denying Angela's first C.R.C.P. 59 motion, the only ground that the court articulated in support of its spurious documents counterclaim ruling was that the defendants did not have notice of the lifetime lease agreement within four months of Don's death.

¶ 44    But the lifetime lease agreement isn't spurious just because Angela's underlying claims failed. *See Better Baked*, ¶ 20. A spurious document is "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." § 38-35-201(3). A groundless document is "one for which a proponent can advance no rational argument based on evidence or the law to support the claim." *Westar Holdings P'ship v. Reece*, 991 P.2d 328, 330 (Colo. App. 1999). It is a document that is "essentially fictitious." *Evans*, ¶ 41.

¶ 45     It does not appear from this record that the parties developed any of these arguments below. The Hemphills' initial counterclaim asserted that the lease agreement "contains an invalid signature for Don . . . and is otherwise unenforceable on its face." But because the proceedings terminated with the directed verdict, the Hemphills did not present their case for their counterclaim. And in their briefs on appeal, the parties dispute whether Angela acted with or without good faith in recording the lease agreement in the first place. But the appealed orders contain no factual findings on these issues.

¶ 46     The judgment and decree quieting title does not explain the statutory basis for finding the lease agreement to be a spurious document and does not contain specific findings that would provide insight into the court's reasoning and the basis for its decision. The oral ruling also does not contain any discussion on this issue. We therefore conclude that this portion of the judgment does not permit meaningful appellate review. *In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997). We reverse this portion of the judgment and remand it to the district court for further proceedings.

### C.    Attorney Fees and Costs

¶ 47    Angela next contends that the court erred by awarding attorney fees and costs to the Hemphills.  She contends the court's order contains inadequate findings and challenges its ultimate conclusion that the Hemphills were entitled to attorney fees and costs.  We agree that the court's findings are inadequate on this issue.

¶ 48    In its entirety, the court's order states as follows:

> THE COURT, having reviewed Defendants' Motion for Attorney Fees and Costs, the Court's file, any response thereto, and having been fully advised on the premises, does hereby GRANT the Motion and Award Defendants their attorney fees and costs from and against the Plaintiff in the amount of $36,318.20, plus interest at the statutory rate until paid in full.

¶ 49    The order — which does not list the statutory basis for the award and does not permit us to understand the court's reasoning — also "does not permit meaningful appellate review." *Aldrich*, 945 P.2d at 1379.  We therefore reverse the order and remand to the district court for further proceedings.

¶ 50    On remand, based on our holding in Part II.B, *supra*, the district court should first make factual findings and determine

whether the lifetime lease agreement is a spurious document. This decision will determine who should receive statutory attorney fees and costs under section 38-35-204.

¶ 51 The court may also consider whether the Hemphills are entitled to attorney fees and costs under section 13-17-102, which allows for an award of fees where an attorney or party has asserted a claim or defense that lacks "substantial justification." § 13-17-102(4); *see Aldrich*, 945 P.2d at 1378; *Sifton v. Stewart Title Guar. Co.*, 259 P.3d 542, 546 (Colo. App. 2011). The district court is in the best position to conduct this analysis because "[w]hether a claim lacked substantial justification is a question of fact for the trial court." *Mitchell v. Ryder*, 104 P.3d 316, 320 (Colo. App. 2004).

¶ 52 In conducting this analysis, the court must make specific findings as dictated by sections 13-17-102 and -103, C.R.S. 2021. *Aldrich*, 945 P.2d at 1378-79. It should also make any other findings necessary to permit meaningful appellate review. *Munoz v. Measner*, 247 P.3d 1031, 1035 (Colo. 2011) (citing *Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987)).

## D.    Appellate Attorney Fees and Costs

¶ 53    Finally, the Hemphills request appellate attorney fees and costs under C.A.R. 38, 39, and 39.1 and sections 13-17-101 to -103, C.R.S. 2021.  We deny the request.

¶ 54    Our conclusions in Parts II.B and II.C, *supra*, that the orders below contain insufficient findings for appellate review demonstrate that Angela's arguments on those issues do not lack substantial justification.  And although we disagree with Angela's interpretation of section 15-15-407, her arguments on appeal are not "substantially frivolous, substantially groundless, or substantially vexatious" and do not warrant an attorney fees award. § 13-17-102(4); *see Makeen v. Hailey*, 2015 COA 181, ¶ 53 ("An appeal is frivolous if the proponent can present no rational argument based on the evidence and law or the appeal is prosecuted for the sole purpose of harassment or delay." (quoting *Mitchell*, 104 P.3d at 323)); *Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. App. 2001) (An appeal "is groundless if there is no credible evidence to support the allegations.").

## III.        Conclusion

¶ 55        We reverse the district court's judgment on the Hemphills' first counterclaim and the order awarding attorney fees and costs to the Hemphills.  We remand for further proceedings consistent with this opinion on these two issues.

¶ 56        Based on our holding that the lifetime lease agreement is unenforceable, we affirm the district court's dismissal of Angela's claims against the Hemphills and Rein and its judgment quieting title to the property in the Hemphills in all other regards.

JUDGE NAVARRO and JUDGE HAWTHORNE concur.