J.D. PADILLA and JDP, LLC, Plaintiffs–Appellants and Cross–Appellees,

v.

Surinder J.S. GHUMAN; Prime Endeavors, LLC; and Faraway Impressions, Inc., Defendants–Appellees and Cross–Appellants.

No. 06CA2021.

Colorado Court of Appeals, Div. V.

Dec. 27, 2007.

Certiorari Denied May 27, 2008.

The Parker Law Firm, P.C., George H. Parker, Fort Collins, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Bell, Boge & Associates, P.C., Gregory S. Bell, Fort Collins, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge LOEB.

In this action to collect on several promissory notes, plaintiffs J.D. Padilla and JDP, LLC, appeal from the judgment entered after a trial to the court in favor of defendants, Surinder J.S. Ghuman, Prime Endeavors, LLC, and Faraway Impressions, Inc. Plaintiffs also appeal from the court's order awarding attorney fees to defendants. Defendants cross-appeal the portion of the court's judgment denying them a refund of attorneys fees paid to plaintiffs in a related foreclosure action. We affirm.

## I. Background

Padilla and Ronald Wykstra purchased five promissory notes from Centennial Bank of the West on December 31, 2004. The notes were originally executed by defendants, and they were in default at the time Padilla and Wykstra purchased them. Four of the notes were secured by real property, and one of the notes was secured by inventory of Faraway Impressions.

Padilla and Wykstra filed this lawsuit on January 10, 2005 to recover judgment under the defaulted notes. On the same day, Padilla hired a locksmith to gain access to defendants' warehouse where the inventory covered by the security agreement was stored. Once inside, Padilla and his employees removed property covered by the security agreement and other items of personal property not covered by the agreement. Upon his arrival at the warehouse, Ghuman demanded that everyone leave, and Padilla left with the property.

Ghuman subsequently tendered payment of the amount owed on the note secured by the inventory, and Padilla returned the property.

Two weeks after filing this action, Padilla transferred his interest in the notes to JDP, and Wykstra transferred his interest in the notes to RAW Timberline Lakes, LLC. Padilla failed to notify the court or defendants of the transfer until June 2005, and JDP and RAW were not joined as parties-plaintiffs until February 2006.

In September 2005, JDP and RAW, as holders of the notes, initiated a separate foreclosure proceeding through the office of the Larimer County Public Trustee. The sale was scheduled to take place in November. After receiving notice of defendants' intent to cure the default on the notes, JDP certified to the Public Trustee the amount necessary for defendants to tender and cure the default. Under protest, defendants tendered the full cure amount certified by plaintiffs.

Despite the resolution of the foreclosure proceeding, plaintiffs continued to pursue this action to trial, which occurred in June 2006. Shortly before trial, Wykstra and RAW entered into a confidential settlement agreement with defendants, and all claims between those parties were dismissed from the case.

At trial, plaintiffs claimed that they submitted an incorrect cure amount in the foreclosure action and sought a deficiency judgment on the notes. Defendants counterclaimed for breach of the peace, conversion, trespass, and outrageous conduct. In response to plaintiffs' claim that they had submitted an understated cure amount in the foreclosure proceeding, defendants introduced evidence showing that they were actually overcharged interest on the notes in that proceeding. As part of their damages, defendants asked the trial court to refund to them overpaid interest that resulted from plaintiffs' retroactive implementation of default interest, along with attorney fees unrelated to the foreclosure proceeding, but included in the cure amount. Defendants also sought attorney fees incurred throughout this action, pursuant to section 13–17–102, C.R.S.2007.

After trial to the court, the court denied plaintiffs' claim for deficiency on the merits and further dismissed Padilla's claims because "he was no longer a holder of any note at issue in this action." The court also found for defendants on their counterclaims for statutory breach of the peace, conversion, trespass, and wrongful self-help. The court found that defendants had not proved their claim for outrageous conduct.

In addition to awarding compensatory damages in connection with the attempted self-help repossession, the court awarded defendants a statutory penalty of $1,000, pursuant to section 4–9–625(h), C.R.S.2007. The court also awarded defendants $2,000 in exemplary damages for plaintiffs' "willful and wanton" conduct. Further, the court awarded defendants a refund of overpaid interest, but declined defendants' request for a refund of overpaid attorney fees. Finally, the court awarded defendants their attorney fees based on a finding that plaintiffs' prosecution of this case lacked substantial justification.

After a separate hearing on the amount of attorney fees owed to defendants, the trial court entered an order awarding defendants all attorney fees requested by them. This appeal followed.

## II. Standard of Review

Plaintiffs appeal from a judgment entered after a trial to the court. We, therefore, review the court's judgment here as a mixed question of fact and law. We defer to the court's credibility determinations and will disturb its findings of fact only if they are clearly erroneous and not supported by the record. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1383 (Colo.1994); *Page v. Clark*, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979). We review de novo the court's application of the governing legal standards. *See Matoush v. Lovingood*, 159 P.3d 741, 743 (Colo.App. 2006)(*cert. granted* May 21, 2007).

## III. Damages

Plaintiffs contend the trial court erred in several respects in its award of damages on

**658**

defendants' counterclaims. Specifically, plaintiffs contend the trial court erred in awarding defendants (1) a refund of excess interest paid during the foreclosure proceedings; (2) exemplary damages; and (3) half of the total damages for which plaintiffs were liable without ascertaining the amount defendants received in settlement with Wykstra and RAW. We reject each of these contentions.

## A. Default Interest

Plaintiffs first contend the trial court erred in awarding defendants damages in the form of a refund for excess interest charges paid as part of the amount to cure the default in the foreclosure action. They contend the court erred in awarding this refund because defendants specifically failed to request excess interest in their pleadings and because plaintiffs had a right under the notes to collect default interest retroactively from the date of default when the notes were held by Centennial Bank.

### 1. Failure to Request Refund

Plaintiffs contend the trial court erred in awarding defendants a refund of overpaid interest in the foreclosure action because the refund was a form of "special damages" that defendants failed to request in their pleadings, trial brief, or proposed trial management order. We disagree.

Here, plaintiffs pursued this action after defendants tendered the full amount certified as due in the foreclosure action. Plaintiffs claimed they made a mistake in the calculation of the cure amount they submitted to the Public Trustee and that they were still entitled to a deficiency under the notes. At trial, Ghuman testified that, in preparation for trial, he calculated the amount that should have been submitted as the cure amount in the foreclosure action. He testified that defendants were actually overcharged, rather than undercharged, because plaintiffs applied the default interest rate retroactively to the date default occurred in their calculation of the cure amount submitted to the Public Trustee.

The court agreed and awarded defendants the amount they were overcharged due to the wrongful use of default interest in the cure amount calculation. Plaintiffs claim the court erred in awarding the refund because this award was a form of "special damages" that defendants failed to request prior to trial.

We conclude the issue of overpaid interest was tried by implied consent of the parties and was properly treated as if it had been raised in the pleadings. *See* C.R.C.P. 15(b).

A trial court has the duty to consider an issue raised by the evidence even though the matter was not pled and no formal application was made to amend. *Prato v. Minnesota Mut. Life Ins. Co.*, 40 Colo. App. 1, 3, 572 P.2d 487, 488 (1977); *see* C.R.C.P. 15(b). Where a party fails to object to the presentation of evidence concerning the issue, it cannot complain on appeal of failure to amend the pleadings. *Id.; see First Nat'l Bank v. Jones*, 124 Colo. 451, 237 P.2d 1082 (1951).

Here, plaintiffs failed to object when Ghuman testified that defendants were overcharged due to plaintiffs' wrongful use of default interest in their calculation of the cure amount. If they had objected, the court could have granted defendants leave to amend their pleadings or a continuance to enable plaintiffs to meet the evidence. *See* C.R.C.P. 15(b). Because plaintiffs failed to give the trial court an opportunity to address their contention that the evidence of overpaid interest was at variance with the pleadings, they cannot complain on appeal of defendants' failure to amend their pleadings. *See First Nat'l Bank*, 124 Colo. 451, 237 P.2d 1082; *Prato*, 40 Colo.App. at 2, 572 P.2d at 488; *see also Eat–A–Bite, Inc. v. Buechner*, 114 Colo. 179, 181, 163 P.2d 198, 198 (1945) (objection to variance between pleading and proof is waived if not raised at trial).

Moreover, we reject plaintiffs' contention that the award of overpaid interest here constituted "special damages."

A party who seeks damages that are not the usual and natural consequence of the wrongful act complained of must specifically plead and prove them. *Bueno v. Denver Publ'g Co.*, 32 P.3d 491, 496 (Colo.App.

2000), *rev'd on other grounds,* 54 P.3d 893 (Colo.2002); *Ed Hackstaff Concrete, Inc. v. Powder Ridge Condo. "A" Owners' Ass'n,* 679 P.2d 1112, 1114 (Colo.App.1984); *see* C.R.C.P. 9(g). The purpose of requiring that special damages be pled with specificity is essentially one of notice. *Rodriguez v. Denver & Rio Grande W. R.R.,* 32 Colo.App. 378, 381, 512 P.2d 652, 654 (1973).

In our view, the excess interest damages here are a natural consequence of plaintiffs' own wrongful conduct and their continued pursuit in this case of further amounts due under the notes. After defendants paid the full cure amount in the foreclosure action, plaintiffs put the calculation of that amount at issue in this action. That defendants would submit evidence showing that the cure amount was miscalculated to their detriment rather than to plaintiffs' was a natural response to plaintiffs' claims. We thus conclude the court did not award "special damages" when it awarded defendants a refund for overpaid interest and therefore did not err in doing so on the grounds that defendants failed specifically to request such a refund in their pleadings, trial brief, or proposed trial management order. *See id.* at 381, 512 P.2d at 654.

Accordingly, we conclude the trial court did not err in awarding defendants a refund of the overpaid interest even though they did not specifically request it in their pleadings.

### 2. Collection of Default Interest

■ Plaintiffs also contend the trial court erred in awarding the refund because, as assignees of the notes, they had a right to collect default interest retroactive to the original date of default when the notes were held by Centennial Bank. We disagree.

Centennial Bank was the original holder of the notes and while it was still the holder, the notes apparently were in default. The notes provided that "[u]pon default … Lender, at its option, may … increase the interest rate" on the notes to a default interest of twenty percent. The notes also included an acceleration clause stating that "[u]pon default, Lender may declare the entire unpaid principal balance on [the notes] and all accrued unpaid interest immediately due."

At the time Centennial Bank assigned the notes to plaintiffs, it had not exercised its option to increase interest to the default rate, and nothing in the record indicates that Centennial Bank took any affirmative action showing an intention to implement the default interest rate.

■ When the notes were subsequently assigned, plaintiffs stood in the shoes of Centennial Bank and obtained all the rights Centennial Bank possessed under the notes. *See Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo.1994)("As a general principle of common law, an assignee stands in the shoes of the assignor.").

The parties agree that the assignment of the notes transferred all of Centennial Bank's rights under the notes to plaintiffs. Therefore, the issue here is whether the holder of a note who has an option to increase the interest rate upon default may do so retroactively as of the date of default after a period of inaction and silence as to that option. Plaintiffs contend that a holder with such an option may exercise it at any time after default and collect the higher interest rate as of the date of default. Under the circumstances present here, we disagree.

■ The parties have cited no authority, and we have found none, discussing the effect of inaction or silence on the option to increase the interest rate under a promissory note upon default. However, the effect of inaction or silence on the option to accelerate payments under a note upon default is well settled. *See, e.g., Goodwin v. Dist. Court,* 779 P.2d 837, 843–44 (Colo.1989)(payee of promissory note may waive right to exercise option to accelerate by "mere inaction"); *Barday v. Steinbaugh,* 130 Colo. 10, 13, 272 P.2d 657, 658 (1954) (same). Where an acceleration provision is exercisable at the option of the obligee, the obligee must perform some clear, unequivocal affirmative act evidencing the obligee's intention to take advantage of the acceleration provision. *Bauer Dev. Co. v. Nu–West, Inc.,* 757 P.2d 1149, 1150 (Colo.App.1988).

We find the reasoning of these cases persuasive and equally applicable in the similar

context of an option to increase the interest rate under a note. We conclude that the holder of the notes in this case, either Centennial Bank or plaintiffs, had the option to raise the interest rate upon default, but was required to take affirmative action to demonstrate an intention to exercise that option. Unless and until the holder exercised that option, interest continued to accrue at the standard interest rate under the notes rather than the default rate because the holder waived its right to exercise its option by failing to take affirmative action to indicate it was exercising the option to implement the default interest rate.

To hold otherwise would produce the unfair and unjust result of allowing a creditor to cause a debtor to believe it was not exercising a discretionary right under a promissory note to implement a default interest rate and then to retroactively exercise the option to implement the default rate, thus holding the debtor liable for interest he or she reasonably believed was not being charged.

### B. Exemplary Damages

Plaintiffs next contend the trial court erred in awarding defendants exemplary damages on their counterclaims in addition to the $1,000 statutory penalty awarded pursuant to section 4–9–625(h), because defendants failed to request exemplary damages in their pleadings and because defendants received a double recovery for their unlawful repossession claim. We disagree with these contentions.

### 1. Request for Exemplary Damages

Plaintiffs contend that exemplary damages are "special damages" that defendants were required specifically to request in their pleadings and, because they failed to do so, the trial court erred in awarding such damages. We are not persuaded.

Once again, a party who seeks damages that are not the usual and natural consequence of the wrongful act complained of must specifically plead and prove them. *Bueno*, 32 P.3d at 491; *Ed Hackstaff Concrete*, 679 P.2d at 1114; *see* C.R.C.P. 9(g). The purpose of requiring that special damages be pled with specificity is essentially one of notice. *Rodriguez*, 32 Colo.App. at 381, 512 P.2d at 654.

■■■ Here, after a bench trial, the court awarded exemplary damages against plaintiffs in the amount of $2000. Plaintiffs argue the court erred because exemplary damages are "special damages," and defendants failed to request them in their pleadings. We note, however, that defendants specifically requested exemplary damages in their trial brief in connection with their counterclaims for conversion and trespass, and also argued for an award of such damages at trial.

Contrary to plaintiffs' assertion, the exemplary damages awarded here are a usual and natural consequence of the intentional torts complained of in defendants' counterclaims. Whether plaintiffs intentionally committed the acts necessary to establish the intentional torts complained of was already at issue in the case. Thus, evidence of willful and wanton behavior while committing those acts, and the trial court's specific finding of such behavior, was not so unique or unusual that a separate or special pleading was required. *See id.*

Accordingly, we conclude that, in this instance, the exemplary damages awarded here on defendants' counterclaims for intentional torts were not "special damages" that needed to be specifically pled. The nature of the counterclaims and the proof required to establish them, along with defendants' requests in their trial brief and at trial, put plaintiffs on sufficient notice such that a specific request for exemplary damages in defendants' pleadings was unnecessary. *See id.*

The trial court concluded that Padilla's conduct was "beyond a reasonable doubt both willful and wanton." In support of its conclusion, the court made the necessary factual findings, with record support, under section 13–21–102, C.R.S.2007. We thus perceive no error in the court's award of exemplary damages. *See M.D.C./Wood*, 866 P.2d at 1383; *Page*, 197 Colo. at 313, 592 P.2d at 796.

### 2. Double Recovery

■■■ Plaintiffs also contend the trial court erred in awarding exemplary damages be-

cause they are essentially a double punishment for the same acts punished by the statutory penalty for wrongful self-help under section 4–9–625(h). We disagree, because we conclude the statutory penalty does not punish plaintiffs for willful and wanton conduct in connection with the tort of conversion.

■ Generally, a claimant may not receive a double recovery for the same act. *Lexton–Ancira Real Estate Fund, 1972 v. Heller,* 826 P.2d 819, 823 (Colo.1992) (prohibiting recovery for treble and punitive damages premised on same facts).

Plaintiffs argue the court's award of the statutory penalty under section 4–9–625(h) for breach of the peace precluded the court from awarding exemplary damages pursuant to section 13–21–102. Plaintiffs assert that both types of damages punished them for the same set of acts.

Contrary to defendants' contention, the acts necessary to establish liability under section 4–9–625(h) do not include acts necessary to establish liability for conversion. A person is liable to a debtor for a $1,000 statutory penalty if, during the taking of collateral by self-help, he or she breaches the peace as defined in section 4–9–601(h)(1)–(3), C.R.S.2007. Under section 4–9–601(h)(1)–(3), a person breaches the peace when, without the permission of the debtor, he or she (1) enters a residence or residential garage; (2) breaks, opens, or moves any lock, gate, or other barrier to enter enclosed real property; or (3) uses or threatens to use violent means.

While the definition of "breach of the peace" for the purposes of part 6 of article 9 of the Uniform Commercial Code is not limited to these three subsections, *see* § 4–9–601, liability for the statutory penalty under section 4–9–625(h) is limited to circumstances provided in these subsections.

Here, the trial court found that plaintiffs entered defendants locked warehouse using the services of a locksmith. Defendants were entitled to, and the court awarded, a penalty of $1,000 because plaintiffs opened a lock to enter enclosed real property without the contemporaneous permission of defendants. *See* §§ 4–9–601(h)(2) & –625(h).

The court also found that plaintiffs committed additional acts that amounted to conversion. Most notably, they unlawfully entered defendants' property and converted personal property not covered by the security agreements as collateral. These actions constituted tortious acts separate and distinct from removing the lock that established liability under section 4–9–625(h). *See Vogel v. Carolina Int'l, Inc.,* 711 P.2d 708, 711 (Colo.App.1985) (upholding an award of exemplary damages for conversion during a wrongful repossession).

In short, a person can breach the peace as defined by section 4–9–601(h)(1)–(3) without converting property and can convert property without breaching the peace as defined by that section.

We conclude the trial court did not err when it awarded separate categories of damages for two distinct acts, by imposing a penalty under section 4–9–625(h) and awarding exemplary damages pursuant to section 13–21–102. *See Heller,* 826 P.2d at 823.

### C. Apportionment of Damages

■ Plaintiffs next claim the trial court erred in assessing damages for which plaintiffs were jointly and severally liable because defendants failed to disclose the terms of their settlement agreement with Wykstra and RAW and, therefore, failed to meet their burden of proof regarding the total amount of damages owed. We disagree.

■ When a release is given in good faith to one of two or more persons liable in tort for the same injury, the aggregate claim against the other tortfeasors is reduced to the extent of any degree or percentage of fault attributable to the released tortfeasors. *See* § 13–50.5–105(1)(a), C.R.S.2007. That is, "in all instances in which a settlement agreement is reached with [a party] in order to avoid exposure to liability at trial, and trial is subsequently held against [a] non-settling [party], the trial verdict shall be reduced by an amount equal to the ... percentage of fault attributed to the settling nonpart[y]." *Smith v. Zufelt,* 880 P.2d 1178, 1188 (Colo. 1994).

Here, defendants entered into a confidential settlement agreement with Wykstra and RAW prior to trial. Plaintiffs and defendants then proceeded to trial, and the court entered a judgment against plaintiffs on defendants' counterclaims. The court assessed some of the damages, including the compensatory damages for the attempted repossession and the refund of overpaid interest charges, jointly against plaintiffs and the settling parties. After entering judgment for the full damages owed jointly by plaintiffs and the settling parties, the court then reduced the judgment against plaintiffs for those damages by half.

Plaintiffs' reliance on *A. Tenenbaum & Co. v. Colantuno*, 117 P.3d 20 (Colo.App.2004), is misplaced. That case interpreted sections 13–50–102 and –103, C.R.S.2007, which govern the effect of a release of one or more joint debtors under a written contract, including a promissory note. *Tenenbaum*, 117 P.3d at 23; *see also* § 13–50–101, C.R.S.2007. Here, however, the damages at issue were assessed against plaintiffs and the settling parties as joint tortfeasors rather than joint obligors under a promissory note. Thus, plaintiffs' damage claims were governed by the Uniform Contribution Among Tortfeasors Act, specifically section 13–50.5–105, which was the statute at issue in *Smith*. *See Smith*, 880 P.2d at 1181.

Accordingly, we conclude that the trial court, consistent with section 13–50.5–105 and the holding in *Smith*, appropriately reduced the judgment against plaintiffs to reflect the fault of the settling parties and did not err in assessing against plaintiffs half of the damages for which they and the settling parties were jointly liable. *See Smith*, 880 P.2d at 1188.

## IV. Attorney Fees

Plaintiffs contend the trial court erred on several grounds in its award of attorney fees to defendants pursuant to section 13–17–102(4), C.R.S.2007. Specifically, plaintiffs contend the court erred by (1) not holding an evidentiary hearing on the issue of whether their maintenance of this action lacked substantial justification; (2) finding that their maintenance of this action lacked substantial

justification; and (3) failing to apportion fees incurred by defendants between fees incurred in defending frivolous claims and fees incurred in defending nonfrivolous claims. We reject these contentions.

### A. Hearing

■■■ Plaintiffs first contend the trial court erred in awarding attorney fees pursuant to section 13–17–102 without holding a separate evidentiary hearing on the issue whether their maintenance of this action lacked substantial justification. We disagree.

Under section 13–17–102(4), a court may assess attorney fees upon the motion of any party if it finds that a party has brought or defended an action that lacks "substantial justification." An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4).

■■■ The decision whether to award attorney fees lies within the trial court's discretion, and we will not disturb such a decision absent an abuse of discretion. *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo.2005). Where the trial court awards attorney fees without holding a hearing and without making specific findings pursuant to section 13–17–103(1), C.R.S.2007, the court abuses its discretion. *Pedlow v. Stamp*, 776 P.2d 382, 386 (Colo.1989).

Here, in its written findings of fact and conclusions of law entered after the bench trial, the trial court concluded that defendants were entitled to attorney fees pursuant to section 13–17–102(4). At trial, the court heard evidence from all parties regarding the grounds on which plaintiffs' claims were based and the merits of those claims. The court then made detailed findings of fact as required by section 13–17–103(1) and concluded that "[t]he manner of prosecution of this case and the Public Trustee action give rise to an inescapable conclusion that the Plaintiffs unnecessarily expanded this litigation, including pursuit of claims and positions which were groundless, frivolous, and in violation of statute."

Plaintiffs contend that, pursuant to section 13–17–101 and *Pedlow*, they were entitled to

a separate hearing on the issue of whether the manner of their prosecution of this case lacked substantial justification. However, these authorities do not require redundant hearings. They simply prohibit a trial court from awarding attorney fees in the absence of a hearing, if requested, and detailed findings of fact. *See* § 13–17–101; *Pedlow,* 776 P.2d at 386 (awarding attorney fees on pleadings and affidavits alone constitutes abuse of discretion).

The record shows that the court heard sufficient evidence and argument at trial to make detailed findings of fact that led to the "inescapable" conclusion that defendants were entitled to attorney fees pursuant to section 13–17–102(4). *See Pedlow,* 776 P.2d at 386. The court then set and conducted a separate hearing on the amount of attorney fees to be awarded. We discern no abuse of discretion in the trial court's procedures and will not disturb its factual findings on appeal. *See City of Aurora,* 105 P.3d at 618.

 In any event, plaintiffs failed to make a timely request for a hearing and thus waived their right to a separate hearing on this issue. *In re Marriage of Aldrich,* 945 P.2d 1370, 1380 (Colo.1997) (the trial court "is under no obligation to conduct a hearing *sua sponte* ").

#### B. Trial Court Findings of Frivolousness and Groundlessness

 Regardless of whether an additional hearing was required, plaintiffs contend the trial court abused its discretion in ruling that their claims were frivolous and groundless. We disagree.

Plaintiffs first contend the court erred in ruling that their claims were groundless and frivolous because Padilla lacked standing. Contrary to plaintiffs' assertion, the trial did not award attorney fees because it found Padilla lacked standing. Indeed, the trial court never mentioned the issue or used the word "standing" in its findings of fact and conclusions of law or its subsequent order awarding a specific amount of fees.

The court did conclude that Padilla continued to prosecute this action as a purported "holder" of the notes for a substantial period of time after he had transferred his interest in them, contrary to section 4–3–301, C.R.S. 2007. However, the fact that Padilla personally sought to enforce the notes long after he transferred all his interest in them was merely one of several factors that supported the court's finding that "the whole case of Plaintiffs, and their entire course of conduct . . . was frivolous, groundless, vexatious, and in bad faith."

Regardless of whether the addition of JDP and RAW as parties-plaintiffs related back to the initial date this action was filed, Padilla was, as the trial court found, less than candid with the court and defendants with respect to the date of transfer. We thus perceive no abuse of discretion in the court's reliance on Padilla's conduct as one factor in finding that plaintiffs engaged in frivolous and vexatious litigation, and we will not disturb its ruling on that basis. *See City of Aurora,* 105 P.3d at 618.

For the reasons stated above, we also reject plaintiffs' related contention that the trial court erred in dismissing Padilla's claims because he was "no longer a holder of any note at issue in this action."

Plaintiffs similarly attempt to narrow the scope of the trial court's findings in support of its award of attorney fees by arguing that their prosecution of this case was not frivolous and groundless after defendants cured the deficiency on the notes in the Public Trustee foreclosure action.

It is not clear from the court's findings the extent to which it found the prosecution of this case after defendants cured the deficiency on the notes to be groundless or frivolous, because the court found several factors supporting its conclusion. The court found, with record support, that plaintiffs' wrongful conduct

> was egregious in nature. It involved a wrongful (and partly successful) repossession, a self-help seizing involving trespass, conversion, a breach of the peace and the taking, in part, of property not even valid collateral for the notes at issue. It further involved demanding an incorrect payoff amount, declaring a default on notes for periods of time when the then-holder had

not declared a default, charging excess interest and making other bogus demands, including overpayments to cure, and J.D. Padilla individually maintaining his claims after January 24, 2005, i.e. for all but the first two weeks of this case, when he was no longer a party in interest.

To the extent the trial court relied on a finding that plaintiffs' continued prosecution of this case was frivolous after defendants cured any default on the notes in the foreclosure action, we conclude the court acted within its discretion. *See Foster Lumber Co. v. Weston Constructors, Inc.,* 33 Colo.App. 436, 442, 521 P.2d 1294, 1298 (1974) (tender of cure amount by debtor precludes creditor from pursuing an independent claim on the note because note is no longer in default).

In sum, the record reflects that the trial court made all necessary factual findings and legal conclusions to support an award to defendants of attorney fees pursuant to section 13–17–102(4). Because we discern no abuse of discretion, we will not disturb the court's decision to award attorney fees. *See City of Aurora,* 105 P.3d at 618.

### C. Apportionment of Attorney Fees

■ Plaintiffs also contend the trial court erred by not apportioning attorney fees incurred by defendants between fees incurred in defending frivolous claims and fees incurred in defending nonfrivolous claims. Again, we disagree.

We do not disagree with the principle asserted by plaintiffs that they should be held liable only for attorney fees incurred as a result of their own conduct lacking substantial justification. *See Fountain v. Mojo,* 687 P.2d 496, 501 (Colo.App.1984).

However, the trial court expressly considered plaintiffs' apportionment argument and specifically found that

the whole case of Plaintiffs, and their entire course of conduct, beginning with tortious self-help attempted repossession, and continuing through this litigation to trial, was frivolous, groundless, vexatious, and in bad faith. Moreover, defense of all of the various claims and charges, and litigation

of the counterclaim, were all inextricably intertwined.

Because the court's findings here are supported by the record, we will not disturb them on appeal. *See City of Aurora,* 105 P.3d at 618.

### V. Remaining Contentions

We have considered plaintiffs' remaining contentions on appeal and conclude they are unavailing.

### VI. Cross–Appeal

■ On cross-appeal, defendants contend the trial court erred in failing to award them damages for attorney fees incurred by plaintiffs in this case but erroneously included in the cure amount in the Public Trustee foreclosure action. We disagree.

The trial court found that "there was no attempt to separate attorney fees between the two proceedings" and that defendants' claim for a refund of attorney fees had "not been substantiated."

In our review of the record, we discern no evidence that would have allowed the trial court to arrive at specific amount of attorney fees to refund to defendants. Because the court's decision was based on its finding that there was a lack of evidence to support this claim, we defer to the court's finding absent a clear abuse of discretion. *See M.D.C./ Wood,* 866 P.2d at 1383; *Page,* 197 Colo. at 313, 592 P.2d at 796.

Defendants argue that the burden was on plaintiffs to apportion their attorney fees and, absent any evidence, defendants are entitled to all the legal fees paid by them in the Public Trustee foreclosure. However, defendants raised this claim for overpaid attorney fees as damages on their counterclaim and thus had the burden of proof to establish such damages in the same way as they did in regard to their claim for overpaid interest. Through discovery, defendants had access to information that would have allowed them to introduce appropriate evidence at trial to support their claim for this aspect of their damages. Their failure to present evidence that would have allowed the court to make a ruling in their favor was fatal to their claim.

Accordingly, we conclude the trial court did not err in denying defendants' request for overpaid attorney fees in the Public Trustee foreclosure sale.

## VII. Appellate Attorney Fees

We decline defendants request for an award of appellate attorney fees pursuant to C.A.R. 39(5) and section 13–17–102(4).

An award of appellate attorney fees pursuant to section 13–17–102(4) is appropriate only if the appeal itself lacks substantial justification. *See* § 13–17–102(4); *Front Range Home Enhancements, Inc. v. Stowell,* 172 P.3d 973, 976 (Colo.App.2007).

Because we conclude that plaintiffs' appeal is not frivolous, we decline defendants' request for an award of attorney fees for defending this appeal. *See Front Range Home Enhancements,* 172 P.3d at 977; *In re Estate of Becker,* 68 P.3d 567, 570 (Colo.App.2003).

The judgment and order are affirmed.

Judge GRAHAM and Judge ROMÁN concur.