25CA0324 Sweet v Dodson 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0324
Arapahoe County District Court No. 20CV32068
Honorable Thomas Henderson, Judge

James Sweet and Mary Sweet,

Plaintiffs-Appellants,

v.

William Dodson and Janis Dodson,

Defendants-Appellees.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

First & Fourteenth PLLC, Julian R. Ellis, Jr., Colorado Springs, Colorado; First
& Fourteenth PLLC, Michael Francisco, Washington, D.C., for Plaintiffs-
Appellants

Snell & Wilmer, L.L.P., Byeongsook Seo, Denver, Colorado, for Defendants-
Appellees

¶ 1      Plaintiffs, James and Mary Sweet (the Sweets), appeal the order awarding attorney fees to defendants, William and Janis Dodson (the Dodsons), under section 13-17-102, C.R.S. 2025.  They contend that the district court erred by (1) finding the action lacked substantial justification; (2) failing to make required findings under section 13-17-103(1), C.R.S. 2025; and (3) admitting evidence of another property dispute between the Sweets and a neighbor.

¶ 2      We affirm the order to the extent the district court found under section 13-17-102 that the Sweets brought or defended this action, in whole or in part, without substantial justification.  But we conclude that the district court erred by failing to consider and make findings concerning the factors in section 13-17-103(1) in determining whether to assess attorney fees and the amount of fees to be assessed.  We therefore reverse the attorney fee order in part and remand the case for the district court to make those findings.

## I.      Background

¶ 3      The Sweets and Dodsons are next-door neighbors.  In 2015, the Sweets began a major backyard renovation that would blur the property lines between their property and the Dodsons'.  The Dodsons agreed to the project with certain conditions, including

1

that the property lines would not change and that the Sweets would memorialize the arrangement in a written agreement.

¶ 4 The Sweets did not provide the Dodsons with a draft agreement until the project was nearly complete. By then, the neighbors' relationship had become strained. The Dodsons refused to sign the agreement because it included terms the parties had never discussed while omitting terms they had agreed upon.

¶ 5 The Sweets then launched what the district court described as a "campaign to pressure the Dodsons into executing later versions of the [d]raft [a]greement." That campaign escalated into conduct that the district court characterized as "harassment and stalking." The Dodsons never signed the agreement and, in April 2020, revoked their permission for the Sweets to enter their property.

## A. Trial Proceedings

¶ 6 The Sweets sued the Dodsons, asserting claims for implied easement, interference with easement, boundary establishment, promissory estoppel, unjust enrichment, conversion, and civil theft. At bottom, the Sweets claimed ownership of the landscaped area on the Dodsons' property and sought damages arising from the Dodsons' contrary claim. The Sweets also recorded a lis pendens

2

against the Dodsons' property, prompting a lender to cancel the Dodsons' pending refinance application. The Dodsons responded with counterclaims for quiet title, injunctive relief, fraud, abuse of process, extreme and outrageous conduct, trespass, and nuisance.

¶ 7 The district court granted summary judgment or judgment on the pleadings in favor of the Dodsons on all of the Sweets' claims except unjust enrichment. In its partial summary judgment order, the court concluded: "The Sweets, as evidenced by their behavior during this litigation, continue a crusade against the Dodsons that can at best be characterized as misguided and at worst without legal support and vexatious. The Sweets' [r]esponse lacks citation to the evidence and is filled with conclusory statements."

¶ 8 The case went to a bench trial on the Sweets' unjust enrichment claim and the Dodsons' counterclaims. The Sweets, though represented by counsel when they filed the action, appeared pro se at trial (as they had for summary judgment). After trial, the court entered judgment in favor of the Dodsons on all claims, granting their requested permanent injunction and awarding them approximately $75,000 in damages. But it denied their request for

exemplary damages, finding that they had not proved beyond a reasonable doubt that the Sweets' conduct was willful and wanton.

¶ 9 The court also awarded the Dodsons their attorney fees and costs under section 13-17-102, explaining as follows:

> [T]he Sweets' claims, defenses, and litigation tactics were "frivolous, substantially groundless, or substantially vexatious." Indeed, this [c]ourt previously found the Sweets' claims can "at best be characterized as misguided and at worst without legal support and vexatious." . . . After hearing all the evidence at trial, the [c]ourt concludes that the Sweets' claims were in fact largely without legal support and vexatious.

The court later determined the amount of the fee award to be $476,229.74 — about $17,000 less than the Dodsons requested.

## B. *Sweet I*

¶ 10 The Sweets appealed the judgment and the attorney fee award. A division of this court affirmed the judgment but reversed the fee award. *Sweet v. Dodson*, slip op. at ¶ 11 (Colo. App. No. 22CA1134, Oct. 5, 2023) (not published pursuant to C.A.R. 35(e)) (*Sweet I*).

¶ 11 As to the merits of the parties' claims, the division concluded that the district court had correctly granted summary judgment on the Sweets' claims and ruled in favor of the Dodsons on their

4

counterclaims following trial. Although the division noted in a couple places that the evidence at trial might have supported contrary findings, it concluded that the district court's findings were amply supported by the record. *See id.* at ¶¶ 46, 59.

¶ 12 As to the attorney fee award, the division first noted that "[t]he entirety of the trial court's reasoning" for awarding attorney fees consisted of the three sentences quoted above and that the later order regarding the amount of fees "didn't offer any additional reasoning on the Dodsons' entitlement to fees." *Id.* at ¶ 80. The division then concluded that the district court had erred by failing to make the finding required by section 13-17-102(6) — that the Sweets, as pro se parties, "clearly knew or reasonably should have known that their claims and defenses were substantially frivolous, substantially groundless, or substantially vexatious." *Id.* at ¶ 81.

¶ 13 Thus, the division remanded the case to the district court to "consider and make findings as to whether the Sweets clearly knew or reasonably should have known that their claims and defenses were substantially frivolous, substantially groundless, or substantially vexatious and, thus, whether the Dodsons are entitled to recover attorney fees under [section] 13-17-102." *Id.* at ¶ 83.

5

## C. Remand Proceedings

¶ 14 On remand, the Sweets filed a motion to determine the scope of the attorney fee hearing. They argued that the hearing should encompass the full scope of the section 13-17-102 analysis, including (1) whether the Sweets' claims and defenses lacked substantial justification and (2) consideration of the factors in section 13-17-103(1). The Dodsons countered that the division's mandate in *Sweet I* barred consideration of those issues and that the sole question on remand was whether the Sweets *clearly knew or reasonably should have known* that their claims and defenses were substantially frivolous, groundless, or vexatious.

¶ 15 The district court agreed with the Dodsons. It concluded:

> This [c]ourt interprets the Court of Appeals' mandate to *not* include the determination of whether the Sweets['] claims and defenses were substantially frivolous, groundless or vexatious. That decision was already made by the trial court and was *not* within the scope of the remand. Rather, the scope of the remand, and hence of the . . . hearing, is limited to the narrow issue of whether, while the Sweets were unrepresented by counsel, they *clearly knew or reasonably should have known* that their claims and defenses were substantially frivolous, groundless or vexatious.

¶ 16 After a hearing, the district court found that the Sweets clearly knew or should have known that their actions in the case were substantially groundless, frivolous, and vexatious, and it reinstated the fee award. In doing so, it incorporated its prior findings of fact after trial and identified several actions by the Sweets that it found to be substantially vexatious. It also concluded that the affirmance of the judgment in *Sweet I* supported its prior finding that the Sweets' claims and defenses lacked legal and factual support.

## II. Scope of Appeal

¶ 17 The Dodsons attempt to cut this appeal off at the pass in two ways. First, they argue that the Sweets' challenges to the fee award are foreclosed by the mandate rule because *Sweet I* limited the remand to what the Sweets knew or should have known. Second, they assert that the Sweets waived their arguments by failing to include them in their petition for certiorari to the supreme court and stipulating to the dismissal of their separate appeal of the fee award after *Sweet I* was announced. We disagree on both points.

### A. Mandate

¶ 18 The mandate rule requires a district court to "follow the law of the case as laid out by an appellate tribunal." *Thompson v. Caitlin*

7

*Ins. Co. (UK)*, 2018 CO 95, ¶ 21. This includes the appellate court's

"[c]onclusions . . . on issues presented to it as well as rulings

logically necessary to sustain such conclusions." *Owners Ins. Co. v.*

*Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 24 (citation

omitted). Moreover, "[w]hen a case is remanded to the [district]

court and subsequently appealed, the reviewing court will consider

only those issues arising after the remand and whether the [district]

court complied with the order of remand." *Simpson v. Yale Invs.,*

*Inc.*, 886 P.2d 689, 699 (Colo. 1994). We review de novo whether

the district court followed the appellate mandate. *Thompson*, ¶ 20.

¶ 19     We disagree with the Dodsons that *Sweet I* affirmed any

portion of the attorney fee order or limited the scope of the attorney

fee proceedings on remand. The division in *Sweet I* reversed the fee

award, concluding that it "cannot stand." *Sweet I*, slip op. at ¶ 81.

Although its primary basis for that holding was the lack of findings

under section 13-17-102(6), the division did not suggest — much

less decide — that the district court's findings were otherwise

sufficient. *See Kuhn v. State, Dep't of Revenue*, 897 P.2d 792, 795-

96 (Colo. 1995) (holding that mandate rule did not apply to issue

that "was not decided" in prior appeal); *Hardesty v. Pino*, 222 P.3d

336, 341 (Colo. App. 2009) (holding that party "cannot escape the broad appellate holding by limiting it to its specific rationale"). To the contrary, it suggested those findings were *not* sufficient, highlighting the brevity of the district court's stated rationale.

¶ 20    Nor did the prior division's focus on section 13-17-102(6) limit the question on remand to that of the Sweets' knowledge. The Sweets argued in the prior appeal that the district court had failed to make sufficient findings under section 13-17-102, including as to the section 13-17-103(1) factors *and* the heightened pro se standard of section 13-17-102(6). Because the division agreed with the Sweets' argument under section 13-17-102(6) and reversed the fee award on that basis, it did not need to address the other claimed deficiencies in the district court's order. And understandably, its remand instructions highlighted the error it had identified.

¶ 21    But in choosing that path, the division did not tacitly take the other findings off the table. Instead, it reversed the fee award and directed the district court to consider "whether the Dodsons are entitled to recover attorney fees under [section] 13-17-102." *Sweet I*, slip op. at ¶ 86; *see also Sharon v. SCC Pueblo Operating Co.*, 2019 COA 178, ¶ 17 ("[W]hen an appellate court reverses a

judgment, 'upon remand, that judgment no longer exists.'" (citation omitted)). The district court could not make that determination without conducting the analysis that statute requires. *See Roberts v. Bruce*, 2018 CO 58, ¶ 12 (noting that section 13-17-102(6) does not "provide an independent basis to award attorney's fees").

¶ 22 Moreover, even if we were to construe the *Sweet I* mandate as limiting the remand to resolution of the section 13-17-102(6) issue, the district court reinstated the original fee award after making those findings. Thus, the original fee award — not just the order on remand — is at issue in this appeal. In reviewing that order, we may address any challenges to that order that were raised and not decided in the prior appeal. *See Kuhn*, 897 P.2d at 795-96.

## B. Waiver

¶ 23 We also reject the Dodsons' argument that the Sweets waived their challenges to the district court's findings by (1) failing to include these issues in their petition for certiorari after *Sweet I* and (2) agreeing to dismiss a separate appeal of the fee award.

¶ 24 Because *Sweet I* reversed the fee award, the Sweets had no reason to seek further review of that award in the Colorado Supreme Court. Nor did they have any reason to pursue a

10

duplicative appeal of that award to this court. In short, they had won on that issue — albeit, on only one of the multiple grounds for reversal they had raised. Thus, the Sweets' decision to pursue their arguments in the district court on remand, while limiting their petition for certiorari to issues on which they had *not* prevailed, did not constitute an "intentional relinquishment" of those arguments. *Bernache v. Brown*, 2020 COA 106, ¶ 10 (citation omitted).

### III.   Attorney Fee Award

¶ 25    The Sweets challenge the attorney fee award on two grounds. They argue that the district court abused its discretion by (1) finding that the action "lacked substantial justification" and (2) failing to make the required findings under section 13-17-103(1).

¶ 26    We disagree with the Sweets' first argument but agree with their second. We therefore reverse the attorney fee award and remand the case to the district court for the sole purpose of making findings under section 13-17-103(1) as to whether the fee award is justified and the amount of fees to be assessed.

### A.   Applicable Law and Standard of Review

¶ 27    A court may award attorney fees if it finds that a party "brought or defended an action, or any part of an action, that

lacked substantial justification." § 13-17-102(4). An action or defense lacks substantial justification when it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-101.5(1), C.R.S. 2025. "Substantially frivolous" means the party can present "no rational argument" in support. *Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co.*, 2023 COA 66, ¶ 42 (citation omitted). "Substantially groundless" means "not supported by any credible evidence." *Id.* (citation omitted). And "substantially vexatious" means the action is "brought or maintained in bad faith to annoy or harass another." *Id.* (citation omitted). As already noted, when a party is pro se — as the Sweets were for much of this litigation — the court must also find that the party "clearly knew or reasonably should have known" that their action or defense was substantially frivolous, groundless, or vexatious. § 13-17-102(6).

¶ 28    The first step of the analysis is "to determine whether the action in question (or any part thereof) 'lacked substantial justification.'" *Munoz v. Measner*, 247 P.3d 1031, 1034 (Colo. 2011). If the court finds that it did, it must make specific findings explaining why. *In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997). Conclusory statements do not suffice. *Id.*

¶ 29    The court must then consider the factors in section

13-17-103(1) "in determining whether to assess attorney fees . . .

and the amount of fees to be assessed."  Although the court need

not address factors that are not relevant, it "must make findings

that reflect how the relevant factors under section 13-17-103

support the conclusion that the offending party . . . engaged in

improper conduct."  *Aldrich*, 945 P.2d at 1379.  It also must enter

findings on those factors to explain the *amount* of fees awarded.  *Id.*

¶ 30    We review an award of attorney fees under section 13-17-102

for an abuse of discretion.  *In re Marriage of Tognoni*, 313 P.3d 655,

660-61 (Colo. App. 2011).  But we review the district court's legal

analysis de novo.  *Id.* at 661.  A court abuses its discretion when it

awards attorney fees without making specific findings under section

13-17-103(1).  *Padilla v. Ghuman*, 183 P.3d 653, 662 (Colo. 2007).

### B.    Lack of Substantial Justification

¶ 31    We first note that the district court *said* it would not address

on remand whether the Sweets' claims and defenses were

substantially frivolous, groundless, or vexatious, deeming that issue

as beyond the scope of the *Sweet I* mandate.  But the Sweets

13

appear to concede, and we agree, that the court made such findings nonetheless. We perceive no abuse of discretion in those findings.

### 1. Substantially Vexatious

¶ 32 In its order on remand, the district court found that the Sweets "knowingly and intentionally acted vexatiously in bringing and maintaining this lawsuit." It identified six pre-filing actions that showed the Sweets "brought" the action in bad faith and four post-filing actions that showed they "maintained" it in bad faith.

¶ 33 Those actions included (1) refusing to agree to a dog-proof fence and acting as if the Dodsons had fabricated that requirement, despite always understanding the Dodsons required one; (2) drafting a proposed agreement that did not include the agreed-upon terms; (3) threatening the Dodsons with legal action if they did not sign the draft agreement; (4) filing a baseless police report against the Dodsons; (5) threatening the Dodsons' daughter's dog-sitting business for the sole purpose of persuading the Dodsons to release their rights; (6) surveilling the Dodsons' property with drones under the guise of the lawsuit without any legitimate reason for doing so; (7) recording a lis pendens against the Dodsons' property and refusing to release it, even after all property-related

claims had been dismissed; (8) refusing to participate in a survey to resolve the property boundaries; (9) targeting the Dodsons' daughter's dog-sitting business in discovery; and (10) attempting to intimidate, bully, or threaten the Dodsons and their counsel.

¶ 34    The Sweets do not challenge any of these factual findings. Instead, they take issue only with the conclusion the district court drew from them — that the Sweets brought this action in bad faith. They assert that the action was a "good-faith effort to adjudicate a property dispute."  But that was a question for the district court. *See Tognoni*, 313 P.3d at 660-61 (noting district court's "broad discretion" in determining whether to award attorney fees). Because we conclude that these facts can reasonably support the district court's determination, we will not disturb it.  *See id.* at 661.

¶ 35    The Sweets also challenge the district court's reliance on a few specific actions, asserting that they had a good-faith basis for those actions.  For example, they argue that the lis pendens was appropriate because their claims concerned property rights — while overlooking the district court's finding that they refused to release the lis pendens after those claims were dismissed.  They assert that seeking discovery from the Dodsons' daughter was proper because

15

she was listed in the Dodsons' initial disclosures — even though the district court's concern was with their targeting of the daughter's *business*. And they claim their refusal of the survey was reasonable because a survey could not resolve their easement claim — even though their boundary establishment claim sought to fix the boundary line as it had been "recognized or acquired" for more than forty years. The Sweets also contend that their prelitigation conduct is irrelevant to whether the action was *brought* in bad faith.

¶ 36 Each of these challenges misses the overall thrust of the district court's ruling. The district court found that the Sweets' *pattern* of behavior — viewed as a whole — supported a finding that they brought and maintained the action in bad faith. *See Padilla*, 183 P.3d at 664 (affirming district court's finding that "the whole case of [p]laintiffs, and their entire course of conduct" was vexatious). And the entirety of the Sweets' conduct before and during the litigation — including conduct that might appear justified in isolation — could bear on that question. To the extent the Sweets claim a good-faith basis for certain of the actions the district court identified, that may be an appropriate consideration under section 13-17-103(1). But it does not undermine the court's

threshold determination that the action, or any part of it, was "brought or maintained in bad faith to annoy or harass [the Dodsons]." *Mulberry Frontage Metro. Dist.*, ¶ 42 (citation omitted).[1]

### 2. Substantially Frivolous or Groundless

¶ 37 Although the district court's finding of vexatiousness could alone support a fee award, the court also found that the Sweets' claims and defenses were substantially frivolous or groundless. It found that the claims were "without legal or factual support," that the Sweets "offered no credible evidence" to prove their claims, and that "[t]he same is true for the Sweets' defenses."

¶ 38 The Sweets assert that the district court found their claims frivolous or groundless simply because they did not prevail. And it is of course true that a claim need not be meritorious to have a rational basis. *See Munoz,* 247 P.3d at 1035 ("[S]imply because a claim lacks merit does not mean that it was frivolous, groundless, or vexatious . . . ."). But the court did not award attorney fees

---

[1] The Sweets assert that the district court made no findings as to how their litigation conduct "unnecessarily expanded the proceeding." § 13-17-102(4), C.R.S. 2025. But that is simply one alternative basis for awarding fees, not a necessary condition. *See id.* (providing that court may award fees if action lacked substantial justification *or* party unnecessarily expanded proceeding).

merely because the Sweets lost. It awarded fees because it found their claims had no legal or factual support — i.e., the Sweets could "present no rational argument based on the evidence or law in support."[2] *Mulberry Frontage Metro. Dist.*, ¶ 42 (citation omitted). The record supports that finding. *See Argo v. Hemphill*, 2022 COA 104, ¶ 51 ("The district court is in the best position to conduct this analysis because '[w]hether a claim lacked substantial justification is a question of fact for the trial court.'" (citation omitted)).

¶ 39    For example, the *Sweet I* division agreed with the district court that the Sweets presented no evidence that "would support a reasonable belief that the permission to enter or remain in the Dodsons' yard was irrevocable," or that the Dodsons made any promise on which the Sweets could reasonably rely. *Sweet I*, slip op. at ¶¶ 21, 31. To the contrary, the division detailed evidence indicating that the permission was revocable at any time. *See id.* at ¶¶ 22-25. The division also concluded that the record supported

---

[2] We do not see the same daylight the Sweets do between the district court's finding that their claims were "without legal or factual support," and the division's requirement in *Mulberry* that the party present "no rational argument based on the evidence or law in support of [it]." *Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co.*, 2023 COA 66, ¶ 42 (citation omitted).

the district court's finding that the Sweets "could not have believed they had a legitimate claim to support the lis pendens." *Id.* at ¶ 46. And the district court concluded that the evidence directly refuted the Sweets' claims for conversion and civil theft, given that the Dodsons never refused to return the Sweets' property and granted them permission to remove it — a ruling the Sweets did not appeal.

¶ 40 The Sweets point to the statement in *Sweet I* that "the suggestion [in an email from the Sweets to the Dodsons] that the parties bind their successors might suggest permanence," while downplaying the upshot of this statement: "the parties never agreed on such a provision." *Id.* at ¶ 24. Without any evidence of such an agreement, or other evidence to support a reasonable belief of irrevocability, the district court did not abuse its discretion in finding the Sweets' claims substantially frivolous or groundless.

¶ 41 The Sweets also argue that the district court erred by finding their *defenses* to the Dodsons' counterclaims were substantially frivolous or groundless because (1) they were entitled to put the Dodsons to their burden of proof; and (2) they reduced the Dodsons' claimed damages by nearly ninety percent, including defeating their claim for exemplary damages. These considerations may bear on

19

the section 13-17-103(1) analysis we address below. On one hand, when an entire action lacks substantial justification and the claims, counterclaims, and defenses are "inextricably intertwined," the court is not required to apportion fees among the various claims. *Padilla*, 183 P.3d at 664. On the other hand, a party "should be held liable only for attorney fees incurred as a result of their own conduct lacking substantial justification." *Id.* But even if some portion of the Sweets' defense was substantially justified, the district court did not abuse its discretion at the "first step of the analysis" by determining that the action, either in whole or in part, lacked substantial justification. *Munoz*, 247 P.3d at 1034.

### C. Section 13-17-103(1) Findings

¶ 42     The Sweets also contend that the district court erred by failing to make findings under section 13-17-103(1). We agree.

¶ 43     Section 13-17-102(4) must be read "in conjunction with section 13-17-103(1), which further assists the court in determining when an award of attorney fees is appropriate." *Munoz*, 247 P.3d at 1034. Section 13-17-103(1) lists factors that the district court must consider in determining "whether to assess attorney fees . . . and the amount of fees to be assessed." These factors "give context and

content to section 13-17-102(4)'s direction to the court that fees are appropriate when a claim is substantially frivolous, groundless, or vexatious." *Munoz*, 247 P.3d at 1034. Thus, even when the court finds that an action lacked substantial justification, it must also make findings under section 13-17-103(1) explaining the basis for the award. *See Aldrich*, 945 P.2d at 1379 (affirming district court's decision to award fees but remanding for court to make findings under section 13-17-103(1) regarding the amount of the award).

¶ 44 The district court did not make any findings indicating that it had considered the factors in section 13-17-103(1) before awarding attorney fees. Indeed, on remand, the Sweets specifically asked the court to make findings under section 13-17-103(1), and the court declined. The district court did not make any such findings before the first appeal either. Its initial three-sentence ruling awarding fees said only that the Sweets' "claims, defenses, and litigation tactics were 'frivolous, substantially groundless, or substantially vexatious.'" And its order determining the amount of the fee award focused on the reasonableness of the requested amount without citing or addressing any of the section 13-17-103(1) factors.

¶ 45    We recognize that the district court's order on remand was comprehensive and may have incidentally touched on some of the section 13-17-103(1) factors.  But by the district court's own account, the order was limited to determining what the Sweets knew or should have known.  It did not make "specific findings pursuant to section 13-17-103(1)" regarding either its decision to assess attorney fees or the amount of the award.  *Padilla*, 183 P.3d at 662.  Indeed, the Dodsons do not argue otherwise.  They argue only that the *Sweet I* mandate precluded the district court from making such findings — a contention we have rejected above.

¶ 46    Thus, because the district court did not make findings under section 13-17-103(1) sufficient to "permit meaningful appellate review" of the fee award, we remand for the district court to consider and make findings as to whether, and how, the factors in section 13-17-103(1) support the award.  *Aldrich*, 945 P.2d at 1379.  In doing so, the court may rely on the existing record or hold a hearing, as it deems appropriate.  *See id.* at 1380.

## IV.   Other Act Evidence

¶ 47    Finally, the Sweets argue that the district court abused its discretion by admitting evidence of another dispute between the

Sweets and a neighbor in Wisconsin.  They contend that this evidence was inadmissible other act evidence under CRE 404(b).

### A. Additional Background

¶ 48 Before the attorney fee hearing on remand, the Dodsons filed a motion to present the remote testimony of Jeffrey Lutz, the Sweets' Wisconsin neighbor, regarding a prior lawsuit the Sweets had brought against him.  They argued that the facts of that dispute were "strikingly similar" to the facts of this case and would show that the Sweets knew or should have known their actions in this case were substantially frivolous, groundless, or vexatious.

¶ 49 The Sweets opposed the presentation of such testimony.  Among other things, they argued that the testimony violated CRE 404(b).  They asserted that the prior dispute could not prove their knowledge because it "involved different neighbors, different conduct, different legal claims, and a different state's law."

¶ 50 The district court allowed the testimony.  Lutz testified that the Sweets' conduct toward him and his family was "the exact same" as their conduct toward the Dodsons, following the same "pattern or . . . blueprint for destroying [their] neighbors." Specifically, he testified that the Sweets called the police on the

Lutzes several times, accused them of harassment and stalking, cut down trees on their property, photographed them on their property, attempted to control how they used their property, and threatened litigation. He also testified that the Sweets filed two petitions for temporary restraining orders, both of which were dismissed.

¶ 51      In its attorney fee order, the district court concluded that CRE 404(b) did not apply because the testimony was not offered to show the Sweets "acted in conformity with [their] character," given that only the Sweets' knowledge — and not their actions — was at issue. Alternatively, the court concluded that even if CRE 404(b) did apply, the testimony was admissible for the permitted purpose of proving the Sweets' knowledge. The court relied on the Sweets' litigation experience — including their dispute with Lutz — as one of multiple grounds for finding that they knew or should have known that their claims were substantially frivolous, groundless, or vexatious.

### B.      Applicable Law and Standard of Review

¶ 52      Evidence of other acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1). Such evidence may be admissible for another purpose, including to prove

24

knowledge. CRE 404(b)(2). To be admissible, other act evidence must be (1) logically relevant (2) to a material fact (3) independent of the prohibited inference of the defendant's bad character, and (4) its probative value must not be substantially outweighed by the risk of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

¶ 53    We review the admission of other act evidence for an abuse of discretion. *People v. Owens*, 2024 CO 10, ¶ 105. A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, unfair, or based on an incorrect understanding of the law." *Id.*

### C.    Analysis

¶ 54    The parties appear to agree that CRE 404(b) applies in an attorney fee hearing, though neither cites authority on that point. Assuming without deciding that it does, we conclude that the district court did not reversibly err by admitting Lutz's testimony.

¶ 55    Although the district court did not cite *Spoto* or explicitly apply its four-part test, its analysis effectively addressed the appropriate considerations. The court concluded that Lutz's testimony was logically relevant to the Sweets' knowledge regarding the frivolousness of this action because it indicated they had "earlier brought two court actions . . . under analogous circumstances that

were also found to be baseless and rejected by a Wisconsin court." It concluded that this relevance had nothing to do with the Sweets' propensity to act in conformity with their character. And it denied the Sweets' associated CRE 403 objection, explaining that because trial was to the court, the court would limit the evidence to "whatever appropriate weight it may deserve." At least as to the prior litigation, that ruling was not an abuse of discretion — even if there were some differences between those cases and this one. *Cf. Walter v. Hall*, 940 P.2d 991, 999 (Colo. App. 1996) (holding that district court did not abuse its discretion by admitting "testimony regarding prior real estate litigation in which defendants were accused" of similar conduct), *aff'd*, 969 P.2d 224 (Colo. 1998).

¶ 56 But even if we were to determine that the district court erred by admitting some or all of Lutz's testimony, we would nonetheless conclude that any error was harmless for two reasons. *See* C.R.C.P. 61; *Moody v. Corsentino*, 843 P.2d 1355, 1375 (Colo. 1993) ("[A] trial court's judgment will not be reversed unless the party challenging the judgment shows the existence of error and that the error had a prejudicial effect."). First, the district court considered Lutz's testimony only for the permissible purpose of proving the Sweets'

knowledge. In explaining its decision, the court did not make any inference about the Sweets' character, much less their actions "in conformity with the[ir] character." CRE 404(b)(1). Second, the Sweets' "litigation experience" was only one of several grounds the court gave for its finding of knowledge. The court also cited (1) the Sweets' competent pro se representation and active participation in the case while represented; (2) their "professional experience" in real estate; (3) and their conduct preceding and during this litigation.

¶ 57 Given these other bases for the district court's ruling, we are not persuaded that its admission of Lutz's testimony, erroneous or not, affected the Sweets' substantial rights. *See* C.R.C.P. 61.

## V. Disposition

¶ 58 The attorney fee order is affirmed in part and reversed in part. The district court's findings under section 13-17-102 — that (1) the Sweets brought or defended the action, or any part of the action, without substantial justification; and (2) they clearly knew or reasonably should have known their action or defense was substantially frivolous, groundless, or vexatious — are affirmed. The case is remanded for the sole purpose of considering and

27

making findings under section 13-17-103(1) in determining whether to assess attorney fees and the amount of fees to be assessed.

JUDGE GROVE and JUDGE YUN concur.